## GEORGE H. POTTER

*v.*

## JOHN McKEE PEEPLES *et al.*

1. SURETY—*discharge under the act of 1877—construction of the statute.* The act of May 11, 1877, providing for the discharge of any surety on the bond of any trustee of any fund or property appointed by any court," upon application by petition to the court in which such bond is filed, applies only to cases where the trustee shall be appointed by the court,—and was not intended to embrace cases where the trustee may be appointed by act of the parties, and gives bond with sureties that he will faithfully execute the trust.

2. In this case several heirs of a deceased person, in the adjustment of a dispute between them in respect to the division of the property, executed an agreement wherein it was provided that a certain portion of the estate should be placed in the hands of a trustee, to be held, used and controlled by him for the benefit of certain of the heirs named. The agreement further provided, that if the parties should be unable to agree as to who should act as trustee, the "judge of the Gallatin circuit court" should appoint the trustee. The parties failing to agree, the then presiding judge of that court made the appointment, the person appointed executing bond with sureties, which was filed in the office of the clerk of the court mentioned. It was held the appointment was not made by the court, in its judicial capacity; but by the judge of the court, in pursuance of the agreement of the parties, and therefore the case was not within the statute so as to enable the sureties to apply to the court for a discharge from their liability on the bond.

APPEAL from the Circuit Court of Gallatin county; the Hon. JAMES C. ALLEN, Judge, presiding.

Mr. JOHN H. MULKEY,* and Messrs. LINEGAR & LANSDEN, for the appellant.

Mr. ANDREW D. DUFF, for the appellees.

* This cause was submitted and argued at a term prior to that when Mr JUSTICE MULKEY came upon the bench.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

In the year 1871 one Orval Pool died, leaving his widow, three married daughters and a son surviving him, and who were entitled to his property, which amounted to several hundred thousand dollars. Soon after his death disagreements and controversies arose between his children as to the division of this property. After various efforts had been made to settle these disputes the parties finally agreed, about the 2d day of November of that year, as to the manner in which the matter should be settled, which agreement was embodied in a written contract of that date, which was executed by them under their hands and seals, together with the husbands of the daughters. It provided that one-half of the estate should be placed in the hands of a trustee, to be held, used and controled by him in trust for the benefit and use of two of the daughters, and upon their decease to be conveyed and paid over to their respective heirs absolutely.

The agreement further provided, in case the parties thereto should be unable to agree as to who should act as a trustee, in that event the judge of the Gallatin circuit court should appoint the trustee to manage the trust fund. It also provided that the trustee should execute a bond, as such, to be approved by the judge of that court. The parties failed to agree upon a person to become the trustee. The Hon. A. D. Duff was at that time presiding judge of the circuit court of that county, and was applied to, and appointed appellant. Appellant thereupon, as principal, and appellees as his sureties, executed a bond which was duly approved and filed in the office of the circuit clerk of Gallatin county.

Appellees, on the 16th day of October, 1877, filed a petition in the Gallatin circuit court, praying that they be relieved and discharged as sureties on the trustee's bond, and that appellant be required to give a new bond and sureties for the faithful discharge of the trust. The bond is in the penal sum of $400,000, and a copy is filed as an exhibit with the petition.

Appellant filed a demurrer to the petition, which was over-ruled by the court, and appellant filed an answer and made the agreement an exhibit, to which appellees filed exceptions. The court, on a hearing of the exceptions, sustained them, and appellant not answering further, the court ordered him to give a new bond as trustee, in the sum of $400,000, and to settle his account as such trustee before the court; which bond, and a statement of his account, were ordered to be filed by nine o'clock the next morning. He having failed to file a new bond and a statement of his account as trustee, as required by the order of the court, appellees applied for his removal, and the court thereupon entered an order removing him as trustee. And he thereupon prayed and perfected an appeal to this court, and has filed a transcript of the record, and assigned errors thereon.

This proceeding was instituted, and the relief sought and granted, under the act of May 11, 1877. (Sess. Laws, p. 142.) The act provides, "That whenever any surety on the bond of any guardian, conservator of any idiot or insane person, or the trustee of any fund or property, appointed by any court, or the heir, executor or administrator of such surety, desires to be released from further liability upon any such bond, he may petition the court in which said bond is filed for that purpose, and upon notice being given to such guardian, conservator or trustee, in such manner as the court may direct, the court shall compel such guardian, conservator or trustee, within a reasonable time, to be fixed by the court, to appear and settle his accounts, and file in such court a new bond, with such penalty and security as may be approved by the court, which being done, the surety may be discharged from all liability on such bond."

The second section provides that if such guardian, conservator or trustee shall fail to comply with such order within the time required, the court shall order such person to be removed from his office or position, and appoint some other fit person guardian, conservator or trustee, in his stead, who is

required to give bond as required by law. This section fur-
ther provides that the person thus appointed shall, in case his
predecessor shall fail to settle and pay over to him the moneys
and other property and effects in his hands, bring suit on his
predecessor's bond, and when collected the sureties on such
bond shall be discharged.

The third section provides that the act shall apply to all
such bonds then in existence, as well as such as might there-
after be entered into; but nothing therein should be construed
to release or in anywise impair the liability on such bond until
a new bond should be filed.

The whole controversy in this case turns upon the true
meaning of the first clause of the first section of this act.
Appellant insists that it only embraces cases of trustees of
funds in court, and for the management of which a trustee
has been appointed by the court, and has no application to
other trust funds; that in this case the trustee was appointed
in the first instance by force of the written agreement of the
parties, and as they agreed it should be by the person who
was judge, as an individual, and not by the court, or by force
of or in the exercise of any official or judicial function; that
no case was pending in court, nor were the parties in court
as litigants or contestants, and hence the court, when appel-
lant was appointed as such, had no jurisdiction of the person
of the parties, or of the subject matter; that in the appoint-
ment of appellee as trustee there was no *actor reus* and *judex*,
and hence no adjudication.

But on the other side it is contended that the appointment
was by the court under a regular order made in and by the
court, and not by the person who held the office of judge, as
an individual or private person; that the parties submitted
the matter in open court, and to the court, and that the order
was made, accepted and acted upon by appellant.

The petition states that appellant was appointed " by the
presiding judge of the Gallatin circuit court, as trustee, on
behalf of certain persons, and certain funds and property, as

mentioned and provided for in a certain instrument in writing, referred to in the recitals of the bond hereinafter mentioned" in this petition.

One of the recitals in the bond referred to, and made an exhibit, is in these words: "Whereas the above named obligees did, on the 2d day of November, A. D. 1871, execute and deliver, in duplicate, under their respective hands and seals, a certain instrument in writing, providing for a division of the estate, both real and personal, of Orval Pool, deceased, and the appointment of a trustee to execute and carry into effect certain duties and trusts therein created and defined; and whereas, the above named George H. Potter has been duly appointed trustee under the provisions of said instrument in writing."

The agreement which the petition mentions, and which is made an exhibit to the answer, has this provision: "A trustee shall be chosen by the parties to this agreement, whose duty it shall be to carry out and execute the trust hereby created, and shall enter into good and sufficient bond, to be approved by the judge of the circuit court of Gallatin county, for the faithful performance of his duties as such trustee. Such bond shall be made payable to the parties to this agreement, for the use of all parties interested in the provisions of this agreement, and if the parties hereto can not agree upon the person who shall act as such trustee, then the said judge of said Gallatin circuit court shall appoint said trustee, and said appointment and approval of said bond may be made by him either in vacation or term time, as may be most convenient."

It thus appears that the parties did not intend that the appointment should be made by the court, but by the judge thereof,—not in his official character—not in the exercise of any judicial function—but simply by virtue of the power conferred on him as an individual by the written agreement. This was so determined in reference to this same appointment in the case of *Pool* v. *Potter*, 63 Ill. 533. It was there said: "Counsel for defendants in error insist, that because Potter

was appointed by the circuit judge, he was trustee *de facto*, though he gave no bond, and his right to act can not be questioned in this suit. They say that complainants had a complete remedy at law by applying to the circuit judge to require Potter to give a sufficient bond. We think they must entirely misconceive the nature of this matter. The circuit judge in making the appointment or approving the bond exercises none of his judicial powers. He is but the mere agent or instrument of the parties to the agreement, deriving his authority solely from that source, and it is extremely doubtful, under the language of that document, whether, when he once acts, his power is not exhausted. If this be so, he could only act a second time, either in the appointment of a trustee, or requiring a further bond, by having his powers, as a court, called into exercise by bill in equity in the usual mode." And we see no reason to modify or in any manner change the conclusion then reached.

But it is claimed that the order of the court below recites that evidence was heard and that the appointment was made by the court. This is true, but the order also recites that it was made "by the judge of the Gallatin circuit court."

Is this case embraced in this law? The fundamental rule, that must always govern in the interpretation of laws and all written instruments is, that the intention of the law-maker, or the parties to contracts, when ascertained, must control. And it is another primary rule that such intention can only be ascertained by the language employed in the law or the written instrument. Extraneous evidence can never be received to ascertain the intention. Where the language of a statute leaves the meaning obscure or doubtful, resort may be had to the law as it stood at the time of the enactment, to consider the evil intended to be suppressed, and thus ascertain the intention of the law-maker. But in this case there is no obscurity in the language of the enactment. It is plain and unambiguous. It, in terms, applies to guardians, conservators and trustees appointed by the court. No other meaning can

be given, unless a signification should be applied to the words contrary to their usual and popular meaning. In fact, their signification would have to be perverted.

We are clearly of opinion, that to give jurisdiction to adjudicate under this statute the trustee must have been appointed by a court. Such is the language of the statute. According to the familiar rule of interpretation, the naming of one thing is the exclusion of others. When the General Assembly provided that sureties of a.trustee appointed by a court might petition to be relieved from their liability for their principal, and the court should require the trustee to give new bond and security, and the sureties thus petitioning should be discharged as therein provided, it is manifest that it was only intended to embrace cases where the trustee had been appointed by the court. We must, therefore, conclude that the General Assembly did not intend to embrace cases where the trustee was appointed by act of the parties, and he gave bond with sureties that he will faithfully execute the trust, nor other classes of cases not named but only cases specified in the act. We are unable to give this act any other construction.

But it is urged that this is a remedial statute and should receive a liberal construction. Whether it be remedial or not, we are not at liberty to extend its provisions beyond the cases enumerated. We would surely have no power to extend it to official bonds generally, nor to executor's and administrator's bonds or to bonds with securities given by one person to another, and yet, so far as we can see, there is the same reason for embracing them in the provision as those enumerated. If we extend the provisions of the law to any case not named, why not to all of a like nature not specified? If relief is granted in one case, when it is not included in terms, where can we stop till it shall be done in favor of all sureties, whether on private or official bonds? We fail to perceive any greater hardship or wrong in suretyship of this character than in any other, and hence there is no necessity to strain a construction of the statute to embrace this case. The petition charges no

loss by the sureties, or any danger of loss, and if there is none where is the necessity for new security and the release of appellees?

This case not being embraced in the statute the court below had no power to grant the relief, and it was error to render the decree, and it must be reversed.

*Decree reversed.*

Mr. JUSTICE MULKEY took no part in the consideration of this case.