THOMAS S. RIDGEWAY

*v.*

GEORGE H. POTTER.

*Filed at Mt. Vernon September 25, 1885.*

114   457
74a  537

1. PRINCIPAL AND SURETY—*right of the latter to require indemnity or further security from the former.* A surety of a trustee can not maintain a bill in equity to require his principal to give other and additional securities upon his bond given to secure the *cestuis que trust,* or counter security, and on his failure to give such security, have him removed.

2.  The contract created by law between a principal and surety is, that the former shall refund to the latter whatever the surety has to pay for him.  The principal is under no legal duty to a surety to keep his co-sureties in equal solvency as they were when they first became such, or to keep any co-sureties to share in the liability.

3.  Courts of equity, in relief of sureties under apprehension of loss or injury, have gone to the extent to allow the surety, after the debt has become due, to file a bill to compel the principal to discharge the debt for which the surety is responsible; and it has been said that a surety, when the debt has become due, may come into equity and compel the creditor to sue for and collect the debt from the principal.

4.  TRUSTEE—*who may require an accounting by him—right of a surety.* On bill by a surety on the bond of a trustee, against the trustee, to compel him to render to the court a report of his acts, including his receipts and disbursements, or his debits and credits, where the *cestuis que trust* are not made parties, there is no error in the court refusing to pass upon the report and state the account, as such a statement of the account would not conclude them.

APPEAL from the Appellate Court for the Fourth District;— heard in that court on appeal from the Circuit Court of Gallatin county; the Hon. THOMAS S. CASEY, Judge, presiding.

Mr. A. D. DUFF, and Messrs. GREEN & GILBERT, for the appellant.

Mr. E. D. YOUNGBLOOD, and Mr. JAMES M. GREGG, for the appellee.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

The bill in equity in this case, filed by Thomas S. Ridgeway, complainant, to the September term, 1882, of the Gallatin circuit court, sets out that by a certain instrument in writing, bearing date November 2, 1871, signed by the proper parties, one-half of the estate of one Orval Pool, then lately deceased, was created a trust fund, the interest and other increase of which were for the benefit of certain persons therein named, during their natural lives, and at their death the remainder was to vest absolutely in their respective heirs; that this in-

strument provided for the appointment of a trustee to receive this trust fund and manage the same, and execute and carry out the provisions of said trust, and that the trustee should enter into a good and sufficient bond, to be approved by the judge of the circuit court of Gallatin county, for the faithful performance of his duty as such trustee; that on December 26, 1871, George H. Potter, the defendant, was, as provided in said instrument, appointed such trustee by the judge of the circuit court of Gallatin county, and on May 15, 1872, the trustee made his bond as such, in the penal sum of $400,-000, with H. O. Docker, David Reid, Robert Reid, J. McKee Peeples, J. McKee Peeples, Jr., and Thomas S. Ridgeway, complainant, sureties, all of whom were then solvent, which bond was approved by such judge; that defendant, since the execution of said bond, has received as such trustee over $100,000, but has never rendered any account thereof to any court or person, nor made any report showing the amount so received or the disposition and management thereof by him; that on December 22, 1879, J. McKee Peeples, Sr., departed this life testate; that his estate is nearly all distributed among his devisees and legatees, and is in process of final settlement and closing up; that all of the surviving sureties on the bond, except complainant, are now wholly insolvent, and that the trustee himself is in limited circumstances as to pecuniary means. The bill asks that the trustee be required, under oath, to answer, and render a full and complete report and account of his actings and doings as such trustee, and if it shall appear that there has been improper management of the trust fund, that the trustee be removed from his trusteeship, and another person be appointed in his stead; and also that if the trustee retains his position, he be required to give other and additional securities upon said bond, or an additional bond, and on failure to do so, that the trustee be removed, and another one appointed in his place, with a prayer for general relief. Defendant filed his answer under oath,

as required by the bill, making a full report as trustee, an exhibit, and part of the answer. No exception was taken to the answer. The cause was referred to the master to take proofs, who only took two depositions as to the insolvency of the sureties. Upon hearing on the foregoing, alone, the court dismissed the bill. On appeal to the Appellate Court for the Fourth District, the decree was affirmed, and the complainant appealed to this court.

It is insisted that it was error in the circuit court not to pass upon the report of the trustee, and approve or disapprove it; but to what end, and for what use, should the court have done so? The beneficiaries of the trust were not before the court, and they would not be bound by any action of the court on the report. The parties to this suit, the surety of the trustee and the trustee, were interested together, on one side of the account, that it should be in favor of the trustee, and an *ex parte* proceeding between them, in the absence of the parties interested on the other side of the account, to take and state the trustee's account, would seem to be idle. Were the persons beneficially interested in the trust property before the court, so that they would be bound by the result of the accounting, and it be conclusive against them and in favor of the surety in any action by the former upon the trustee's bond, then the propriety of this complainant, who is but a mere surety for the trustee, asking for a settlement of the account before the court, might with more reason be urged.

As respects the other relief asked, the giving of additional security, abundant authority is cited to the effect that courts of equity always exercise control over trustees in the administration of their trusts; that if trust funds become endangered by the financial failure of the trustee, a court of equity will protect them, and will always see that trust estates are not exposed to danger or loss; and it is said, that by the express terms of the instrument creating this trust fund, the trustee is required to execute a good and sufficient bond, which means

that during the time he acts as trustee he shall keep and maintain a good and sufficient bond. All this is very well, and would be quite apposite were the beneficiaries of this trust fund the parties here complaining; but the persons for whose benefit this bond was given make no complaint that it is not good and sufficient, but, for aught that appears, are content therewith as it is. The bond was not given for the benefit of the complainant, and he has no cause of complaint that it is not good and sufficient for the protection of the trust estate. He has no interst in the property the bond was given to protect. There is no pretence, from any allegation in the bill, that the bond is not now amply good and sufficient. The complainant is making demand for further security in his own interest, in order that he may have others to share with him his responsibility on the bond, or that he may get relieved from further liability. He is entitled to complain only in respect of some duty which is owing to himself, and not for any failure of duty toward others,—the beneficiaries of this trust fund.

The contract which arose between the trustee and complainant, from the relation of principal and surety, was, that the former would refund to the latter whatever the surety had to pay for the principal; but the principal came under no such duty that he would keep the co-sureties on the bond in equal solvency as they were at the time they executed the bond, or that he would keep any co-sureties on the bond to share with complainant his suretyship. Courts of equity, in relief of sureties under apprehension of loss or injury, have gone to the extent to allow the surety, after the debt has become due, to file a bill to compel the debtor to discharge the debt for which the surety is responsible. And it has been said that a surety, when the debt has become due, may come into equity and compel the creditor to sue for and collect the debt from the principal. (1 Story's Eq. Jur. sec. 327.) But we have been referred to no precedent for the maintenance by a

surety of a bill of like character with the present, and we know of no principle of equity under which such a bill is to be sustained. Our statutes have to a certain extent provided for the release of sureties upon bonds which they have executed,—as, when a surety upon the official bond of a public officer desires to be released from such bond, after the taking of certain steps on the surety's part to that end, if the officer fails to give a new bond, his office is made vacant. (Rev. Stat. 1874, p. 720, sec. 10.) And so there is provision that any surety on the bond of any guardian, conservator of any idiot or insane person, or the trustee of any fund or property, appointed by any court, may, by petition in court, compel such guardian, conservator or trustee to appear and settle his accounts, and file a new bond. (Laws 1877, p. 142.) But it has been decided that this statute did not embrace the case of this particular bond. *Potter* v. *Peeples et al.* 92 Ill. 430.

We can see that it is a hardship for the complainant to stand as the sole solvent surety on such a bond, where there is no express requirement for any accounting and settlement of accounts, subject to an unknown and indefinite liability, and that it would be very desirable on his part to have afforded to him the relief provided by this latter statute, and as asked for by his present bill; but we do not see how it can be done, aside from the aid of any statutory provision in such behalf.

The decree of the Appellate Court must be affirmed.

*Decree affirmed.*

Mr. CHIEF JUSTICE MULKEY took no part in the consideration of this case.