JOSEF LURIE *et al.*

*v.*

ADOLPH J. SABATH *et al.*

*Opinion filed February 17, 1904—Rehearing denied April 7, 1904.*

1. TRUST—*the evidence must be clear to establish trust.* Evidence to establish a trust must be clear and satisfactory, not only as to the existence of the trust, but also as to its terms and conditions.

2. SAME—*what does not tend to establish trust.* The purchase by a surety upon the bond of an insolvent guardian who had misappropriated his ward's money, of judgments against such guardian in favor of third parties, is consistent with his right to protect his own interests as far as possible, and does not tend to show that the purchase was in trust, for the benefit of the guardian and minors.

3. SAME—*chancellor's finding not disturbed unless clearly against the evidence.* The chancellor's finding against the existence of a trust will not be disturbed, on appeal, unless clearly against the evidence, where such finding is based upon oral testimony given in open court.

*Lurie* v. *Sabath*, 108 Ill. App. 397, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. M. F. TULEY, Judge, presiding.

Kraus, Alschuler & Holden, for appellants.

John F. Holland, for appellees.

Mr. Justice Wilkin delivered the opinion of the court:

Appellants filed their bill in the circuit court of Cook county, against appellees, to establish a trust and for an accounting. Upon a hearing in open court before the chancellor the bill was dismissed for want of equity. An appeal was prayed to the Appellate Court for the First District, where that order was affirmed, and this further appeal is now prosecuted.

There is but one question raised for our determination, and that is, whether the allegations of the bill alleging the trust were sustained by the evidence.

In 1892 the appellant Josef Lurie was appointed by the probate court of Cook county executor of the estate of Adolph Lurie, and at the same time was appointed guardian of Bertha, Albert and Gottlieb, the three minor children of the latter. Prior to his death, Adolph and Josef Lurie had been engaged in the mercantile business in Chicago, conducting three stores. After the death of Adolph, and after the appointment of Josef as executor and guardian, as above stated, the business was continued by the latter until he sold an interest in the same to his son, Max Lurie, and thereafter the stores were conducted by the father and son as partners, the latter, however, having but a small amount of money invested therein. The firm met with financial reverses and finally failed, becoming insolvent. On November 23, 1898, the appellant Josef Lurie filed in the probate court of Cook county his report as guardian of the above named minors, showing an indebtedness by him to them of $24,107.36, and at the same time asked that he be relieved as such guardian and his successor appointed. His petition also set forth that he had no property except his interest in the three stocks of goods, two promissory notes amounting to $6500, and two city lots, the value of which does

not appear, encumbered for $600. The prayer of his peti-
tion was, that he be permitted to turn said property over
to his successor and that he be credited by the court with
the value thereof. The probate court accepted his res-
ignation and appointed Joseph Sabath, one of the appel-
lees, as his successor and ordered the property turned
over to the latter, which he was ordered to hold until
the further order of the court. The same order recited
that the value of said property should be left for future
determination by the court. Josef Lurie turned over all
of said property except the three stocks of goods, which
he was unable to deliver to his successor for the fol-
lowing reasons: Among the creditors of appellants and
Adolph Lurie was the firm of John V. Farwell & Co., and
on November 21, 1898, they sued out a writ of attach-
ment, and the same had been levied upon said stocks of
goods by the sheriff of Cook county on a claim of $22,000
due said firm. Immediately after that attachment had
been levied upon the goods and possession taken by the
sheriff, negotiations were entered into, in which it was at-
tempted to arrive at an agreement whereby the business
could be continued, but on account of fear of involun-
tary bankruptcy proceedings no definite conclusion was
reached, but on December 10, 1898, it was stipulated by
all parties concerned that the stores should be opened by
the sheriff for the retail Christmas trade, and as a result
of that agreement $8000 was realized from said stocks of
merchandise. In order that the minors should be allowed
to receive their *pro rata* share of whatever was realized
from such sale with the other creditors, the said Josef
Lurie made and delivered to Joseph Sabath, as guardian,
his promissory note for the sum of $24,107.36, dated back
to November 23, 1898, due one day after date, being the
amount which he owed the minors as shown by his re-
port of the date of said note. On December 1, 1898, suit
was begun by Sabath on that note, and at the same time
five other suits were commenced against the appellants.

Judgments were rendered against them in the six suits for $48,531.79. On November 9, 1898, one A. J. Sabath, who was one of the bondsmen of Josef Lurie as guardian, and a man by the name of Alexander, bought the judgment of Farwell & Co., amounting to $22,000, paying therefor $10,500, and subsequently also purchased the judgments of certain other creditors. On December 28, 1898, the sheriff of Cook county sold at public auction the remainder of said stocks of goods and the same were purchased by the same parties, that is, A. J. Sabath and Alexander, for $14,000, and the goods were turned over to them by said sheriff, and they thereafter retailed them in their own right, as owners. On December 29, 1898, after the merchandise had been sold and delivered to said parties by the sheriff, the superior court of Cook county entered an order distributing the net proceeds of the sale among the judgment creditors of appellants, upon which distribution A. J. Sabath, as assignee of Farwell & Co., and other creditors, received the sum of $4537.22. It was then contended by appellants that the purchase of the judgments by A. J. Sabath and Alexander, and the purchase of the merchandise by them, were in trust for the benefit of appellants and said minors, and accordingly this bill was filed in the circuit court of Cook county, alleging that an oral agreement was entered into on November 23, 1898, by Josef Lurie and Max Lurie of the one part, and Joseph Sabath, as guardian of the three minors, and A. J. Sabath and Alexander, of the other part, by which the appellants transferred their interest in the goods to the said A. J. Sabath and Alexander, who, in consideration thereof, agreed to buy up all the outstanding claims with their own money and sell the goods, and, after reimbursing themselves, to turn over the balance to pay the indebtedness of Josef Lurie, and to account to the said appellants for any sum remaining. The allegations of the bill were specifically denied by appellees, thus forming the issue presented to us for decision,

The law is, that in order to establish the trust the evidence offered by complainants below must have been clear and satisfactory, not only as to the existence of the trust, but also as to its terms and conditions. (*Furber* v. *Page*, 143 Ill. 622; *Francis* v. *Roades*, 146 id. 635; *Towle* v. *Wadsworth*, 147 id. 80.) The bill alleges that the trust was created on November 23, 1898, and an instrument in writing is set up in the bill purporting to contain all of its terms and conditions, but under the undisputed facts of the case it is clear that no trust was or could have been created at that time, and if it was created at all, it must have been not earlier than December 8 of that year, and the condition of the property on the latter date was such that we are unable to understand how the parties could have anticipated the subsequent events which occurred, and entered into the alleged agreement. On that date, December 8, the property was in the hands of the sheriff under attachment, and negotiations were then pending between the parties and Farwell & Co. for a settlement. At that time the judgment against Lurie had not been purchased by A. J. Sabath and Alexander, nor had any of the goods been sold by the sheriff. The negotiations between the parties resulted in no agreement whatever, and the property was subsequently sold, as above stated. It is clear from the evidence that the writing set up in the bill was not prepared on December 8, but was drawn up some thirty or forty days after that date from a memorandum kept by one of the attorneys, and was never signed by A. J. Sabath and Alexander, or either of them, and if presented to them for their signatures they refused to sign it; nor was it signed by Joseph Sabath, the guardian. Manifestly, he could only have executed such an agreement under the authority of the probate court, and no such authority was given him. The contention that the order of that court, on November 23, 1898, directing him, as guardian for the minor children, successor to Josef Lurie, to take possession

of the property, which exceeded in value the liability of Lurie to the minors, authorized and made it his duty to enter into the alleged agreement, is wholly untenable. That order authorized the successor of Josef Lurie to take charge of all the property then in the possession of Josef Lurie, but this property was not then in his possession, and was subsequently sold without its having been returned to him. If the contention of appellants is true, the probate court by its order attempted to authorize the guardian to accept in full payment of all claims due his wards, goods which were then in the possession of the sheriff of Cook county under writs of attachment aggregating in amount much more than was realized from their sale.

Appellants also insist that the sheriff's sale is evidence of the existence of the alleged trust, for the reason that the goods were sold for a sum far less than their actual value, and they say that by reason of the trust agreement competition was stifled and they (the appellants) did not attempt to protect said goods from being sacrificed. The evidence, however, shows that the goods were variously estimated in value at from $30,000 to $40,000, and that at the sheriff's sale they brought $22,-834. The sale was made in the usual manner of conducting sheriff's sales of that kind,—that is, the goods were sold at auction to the highest bidder, different persons bidding on them; and it is not true, as we understand the evidence, that they were sold at a sacrifice or for an inadequate price at such forced sale, nor does it satisfactorily appear that the appellants had the ability or could have made them sell for a higher price. The action of A. J. Sabath and Alexander in buying them was consistent with their interests. They sustained no legal, substantial or trust relations to the minors. A. J. Sabath was one of the bondsmen of Josef Lurie as guardian, who had become insolvent and his bondsmen liable for his misappropriation of the minors' money. The action

of A. J. Sabath in buying the goods was doubtless with a purpose to save himself from as much loss as he could upon that bond. All that he did was perfectly consistent with that purpose and affords no evidence whatever of an existing trust, as alleged in the bill.

The evidence also strongly tends to show that this alleged trust was an afterthought on the part of Josef Lurie, who had improperly used the money of his wards in his own business and thereby lost it. He was hopelessly insolvent and his bondsmen were liable for the balance due his wards. On April 26, 1900, and on June 15 of that year, notwithstanding his former report of November 23, 1898, he filed petitions in the probate court in which he claimed that the deficiency in his account as guardian was caused by the natural loss and decline of the mercantile business, and not through any wrongful act or fraud on his part, and in those petitions he also claimed that the property turned over to his successor largely exceeded in value the amount of his liabilities to his wards, and asked the court to determine the amount of credit he was entitled to, and to discharge him and cancel his bond. In neither of these petitions did he say anything about a trust having been created between the parties to this suit, although, according to his bill, the trust agreement had been entered into on November 23, 1898.

We think the testimony in this record clearly preponderates in favor of the appellees. But even if it could be held otherwise, the witnesses appeared and gave their testimony in open court, in the hearing and presence of the chancellor, and the rule in such case, as often announced by this court, is, that his finding will not be disturbed unless it can be said that it is against the clear weight of the evidence.

We are satisfied that the decree of the circuit court. was in conformity with the law and the facts of the case, and that it was properly affirmed by the Appellate Court.

*Judgment affirmed.*