WILLIAM KASPAR

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

*Opinion filed October 23, 1907—Rehearing denied Dec. 10, 1907.*

1. GUARDIAN AND WARD—*provisions of Official Bonds act, for release of sureties, do not apply to guardians' bonds.* The provisions of the act of 1874, as amended in 1879, relating to official bonds, in so far as they provide for the release of sureties upon official bonds, do not apply to guardians' bonds.

2. SAME—*new bond taken under section 35 of the Guardian and Ward act does not release the sureties.* A new bond taken by the county court under section 35 of the Guardian and Ward act (Rev. Stat. 1874, p. 562,) does not have the effect to release the sureties on the former bond, but is merely additional security, and both bonds remain in force for the protection of the minor.

3. SAME—*act of 1877 is only authority for release of surety on guardian's bond.* The act of 1877 (Laws of 1877, p. 142,) is the only authority under which the county court may release a surety on a guardian's bond, and to effect such release there must be a petition by the surety for discharge, notice to the guardian, a settlement of the guardian's accounts, the filing and approval of a new bond and an order of the court discharging the surety from liability on the old bond.

4. SAME—*when bond is not counter-security.* A new bond required by the county court of a guardian, which is substantially in the form prescribed by section 34 of the Administration act, running to the People and conditioned upon the guardian's having kept and performed the conditions of the old bond and upon his continuing to keep and perform such conditions and to perform his duties according to law, is an additional security and not a counter-security which should run to the sureties upon the former bond.

5. SAME—*an agreement between a resigning guardian and new guardian does not release the sureties.* No contract or arrangement made between a retiring guardian and the new guardian with respect to the assets in the hands of the retiring guardian at the time he resigned can operate as a release of the sureties upon the bond of the retiring guardian.

6. SAME—*what matters do not affect release of the sureties on former guardian's bond.* The facts that the county court approved the action of the new guardian in receiving from the former guard-

ian certain property which was to be sold and the proceeds applied upon the former guardian's indebtedness to the ward, and that the ward, after attaining majority, received and retained the amount realized from the sale of such property in part settlement of the indebtedness, do not release the sureties upon the bond of such former guardian.

7. PRACTICE—*when a dismissal as to a joint defendant does not work a discontinuance of suit.* Dismissal, before final judgment, of a suit upon a guardian's bond as to the principal and one of the sureties does not effect a discontinuance of the suit as to the other surety, since the latter might have been sued alone upon the bond in the first instance; nor does it alter the case that the judgment was rendered upon questions of law and not upon a verdict.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. LOCKWOOD HONORE, Judge, presiding.

KRAUS, ALSCHULER & HOLDEN, for appellant.

JOHN F. HOLLAND, and WILLIAM SANDERS ELLIOTT, for the People.

Mr. CHIEF JUSTICE HAND delivered the opinion of the court:

This was an action of debt commenced in the circuit court of Cook county by the appellee, against the appellant and Josef Lurie and Joseph Babka, upon a new guardian's bond, bearing date March 29, 1895. The case was tried upon an amended declaration consisting of two counts. The first count was in the following form:

"The People of the State of Illinois, which sues in this behalf for the use of Joseph Sabath, as guardian of the estate of Gottlieb Lurie, minor, by John F. Holland, his attorney, complains of Josef Lurie, William Kaspar and Joseph Babka, defendants, of a plea that they render to the plaintiff, for the use aforesaid, the sum of $50,000, which

they owe to and unjustly detain from the plaintiff. For that whereas, at the April term, 1892, of the probate court of the county aforesaid, to-wit, April 25, one Albert Lurie, then a minor above the age of fourteen years, the brother of said Gottlieb Lurie and Bertha Lurie, minors under the age of fourteen years, personally appeared before said court and petitioned said court to appoint the said Josef Lurie as guardian of said Albert Lurie, Gottlieb Lurie and Bertha Lurie, and thereupon the said Josef Lurie was approved and appointed as guardian of the persons and estate of the said Albert Lurie, Gottlieb Lurie and Bertha·Lurie, and the same court then and there took and approved a bond of the said Josef Lurie, with Simon Pick and Frank Zajicek as two sufficient sureties in double the amount of the personal estate of the said Albert Lurie, Gottlieb Lurie and Bertha Lurie, and six times the amount of the gross annual income of their real estate, and on that occasion the said Josef Lurie, Simon Pick and Frank Zajicek, then and there, by their writing obligatory bearing date the 21st day of April, 1892, jointly and severally acknowledged themselves to be held and firmly bound unto the plaintiff in the sum of $50,000 above demanded to be paid to the plaintiff, which said writing obligatory was and is subject to a certain condition thereunder written, to the effect that if the said Josef Lurie should faithfully discharge the office and trust of said guardian of the said Albert Lurie, Gottlieb Lurie and Bertha Lurie according to law, and should make a true inventory of all the real and personal estate of the said Albert Lurie, Gottlieb Lurie and Bertha Lurie that should come to the possession or knowledge of the said Josef Lurie and return the same unto the said probate court at the time required by law, and should manage and dispose of all such estate according to law and for the best interest of said Albert Lurie, Gottlieb Lurie and Bertha Lurie, and should faithfully discharge his, the said Josef Lurie's, trust in relation thereto, and should render an account, on oath, of the property

in the hands of him, the said Josef Lurie, and of the management and disposition of said estate, within one year after his appointment and at such other times as he should be required by law or directed by the court, and upon removal from office or at the expiration of such trust settle his account in said court or with the wards or their legal representatives, and pay over and deliver all the estate, title, papers and effects remaining in his hands and due from him on such settlement, to the person or persons lawfully entitled thereto, then the writing obligatory should be void and otherwise should remain in full force and virtue, as by the said writing obligatory and the conditions thereof remaining affiled in the said probate court will appear; and thereupon the said Josef Lurie then and there took upon himself the said office and trust of guardian of the estate of said Albert Lurie, Gottlieb Lurie and Bertha Lurie, and thenceforth was such guardian until the 14th day of March, 1895, and on said last mentioned date the said Josef Lurie, being such duly appointed and qualified guardian, was directed by said probate court of Cook county, by an order duly entered by said court, to file his new bond as such guardian, and the said Josef Lurie afterwards, on, to-wit, the 29th day of March, 1895, in compliance with the said order of said probate court, and while being said duly appointed and qualified as well as acting guardian of the persons and estates of said Albert Lurie, Gottlieb Lurie and Bertha Lurie, filed his guardian's new bond, and the said court then and there took and approved a guardian's new bond of the said Josef Lurie, with the said William Kaspar and Joseph Babka as two sufficient sureties in double the amount of the personal estate of the said Albert Lurie, Gottlieb Lurie and Bertha Lurie, and six times the amount of the gross annual income of their real estate, according to the form of the statute, etc., and on that occasion they, the said Josef Lurie, William Kaspar and Joseph Babka, defendants, then and there, by their writing obligatory bear-

ing date said 29th day of March, 1895, jointly and severally acknowledged themselves to be held and firmly bound unto the plaintiff in the sum of $50,000 above demanded to be paid to the plaintiff, which said writing obligatory was and is subject to a certain condition thereunder written, to the effect that whereas the said Josef Lurie, as guardian of the persons and estates of Albert Lurie, Gottlieb Lurie and Bertha Lurie, minors, had theretofore executed a bond, payable to the People of the State of Illinois, for the use of Albert Lurie, Gottlieb Lurie and Bertha Lurie, and for the discharge of his duties as guardian, as recited in said bond, meaning the said bond which bears date the 21st day of April, A. D. 1892, and is the bond hereinbefore recited, therefore if the said guardian, Joseph Lurie, shall well and truly have kept and performed, and shall well and truly keep and perform, the conditions of the bond first given, as aforesaid, meaning the bond hereinbefore recited, in all respects according to law, and shall in all respects have performed and shall continue to perform the duties of his office, as aforesaid, then the said writing obligatory should be void and otherwise should remain in full force and virtue, as by the said writing will appear; and thereupon the said Josef Lurie continued the said office of guardian of the said Albert Lurie, Gottlieb Lurie and Bertha Lurie, and thenceforth was such guardian until the 23d day of November, A. D. 1898, when the said Josef Lurie resigned his said office and trust and the said Joseph Sabath was duly appointed and qualified, and thenceforth has been, and still is, guardian of the estate of said Gottlieb Lurie, who is a minor and not yet of lawful age. And the plaintiff in fact says that the said Josef Lurie did not faithfully discharge the said office and trust of guardian of the said Gottlieb Lurie according to law, but neglected and refused so to do, to the injury of the said Joseph Sabath, as guardian of the estate of said Gottlieb Lurie. And for assigning a breach of the said condition of the writing obligatory dated March 29,

1895, the plaintiff says that after the said appointment of the said Josef Lurie as such guardian, and after the making of the said guardian's new bond March 29, 1895, as aforesaid, and before the resignation of said Josef Lurie as such guardian and the appointment of the said Joseph Sabath, a large sum of money, to-wit, the sum of $9000, the money of the said Gottlieb Lurie, came into the hands of the said Josef Lurie, as guardian of the estate of said Gottlieb Lurie, yet the said Josef Lurie, not regarding his duty as such guardian, during that time there converted and disposed of the said money to his own use, and has neglected and refused, and still neglects and refuses, to pay over to the said Joseph Sabath, guardian of said Gottlieb Lurie, the said sum of money or any part thereof, although he, the said Joseph Sabath, as guardian, on the date aforesaid, was there lawfully entitled thereto and the said Josef Lurie was then and there requested to pay over the same to him, Joseph Sabath, as guardian aforesaid, by reason of which premises the said writing obligatory of March 29, 1895, became forfeited, and thereby an action has accrued to the plaintiff to demand of the defendants, for the use aforesaid, the said sum of $50,000 above demanded, yet the defendants," etc.

And the second count was the same as the first, except as to the breach assigned, which was as follows:

"And for assigning a breach of said condition of said writing obligatory dated March 29, 1895, the said plaintiff says that after the said appointment of the said Josef Lurie as such guardian, and after the making and after the filing and approving in said probate court of the said writing obligatory aforesaid which bears date the 21st day of April, 1892, and is recited in said writing obligatory of March 29, 1895, and before the said 23d day of November, 1898, divers sums of money belonging to the said Gottlieb Lurie, amounting to a large sum, to-wit, the sum of $9000, belonging to the said Gottlieb Lurie, came into the hands of the said Josef Lurie, as such guardian, and that in the probate

court of said Cook county, in the May term, 1902, to-wit, on the 23d day of May, 1902, the said Josef Lurie, guardian as aforesaid, settled his accounts as such guardian, and that on such settlement, on the date last aforesaid, by the consideration and order of said probate court, there was found due from said Josef Lurie, as such guardian, as aforesaid, to the said Gottlieb Lurie, the sum of $6774.81 on account of moneys that had come into the hands of the said Josef Lurie, as such guardian of Gottlieb Lurie; and thereupon the said probate court, on said 23d day of May, 1902, ordered said Josef Lurie, as such guardian, to pay said sum of $6774.81 to said Joseph Sabath, as guardian of said Gottlieb Lurie, forthwith, which said order of said probate court still remains in full force, unreversed, and no appeal was ever taken therefrom, yet the said Josef Lurie, guardian as aforesaid, has not paid the said sum, or any part thereof, to the said Joseph Sabath, guardian as aforesaid, or to any person entitled to the same, but has hitherto neglected and refused so to pay the same, although often requested so to do, by reason of which premises the said writing obligatory of March 29, 1895, became forfeited, and thereby an action has accrued to the plaintiff to demand of the defendants, for the use aforesaid, the said sum of $50,000 above demanded, yet the defendants," etc.

The appellant filed twenty-four pleas to the declaration, many of which were amended a second time. Numerous demurrers, replications, rejoinders, sur-rejoinders and rebutters were also filed, and all questions of law finally having been determined by the court in favor of the appellee the suit was dismissed by the appellee as to Josef Lurie and Joseph Babka, and judgment was rendered against the appellant for the sum of $50,000 debt, the penalty of the bond, and $7988.57 damages, which judgment has been affirmed by the Branch Appellate Court for the First District, and the record, which contains no bill of exceptions but which contains nearly eight hundred and fifty pages, consisting of

the pleadings and orders entered by the court in disposing of demurrers filed by the respective parties, has been brought to this court for further review, and seventy errors have been assigned, although the appellant has elaborated, in a brief of one hundred and eighty-seven pages and a reply brief of forty-five pages, only the following propositions: (1) The dismissal as to Josef Lurie and Joseph Babka worked a discontinuance of the case; (2) the sureties upon the guardian's bond sued on were released by the giving by said guardian of two subsequent bonds; (3) the sureties upon the bond sued on were released by reason of the action of the successor of Josef Lurie (which action was approved by the probate court of Cook county) in receiving from Josef Lurie, as Lurie's successor, certain personal property at the time Lurie resigned as guardian; and (4) the bond sued on was given as counter-security.

The filing of the numerous pleadings subsequent to the declaration was preposterous, and it would be a waste of time for this court, in an opinion, to take up and consider *seriatim* the action of the trial court in disposing of the forty-eight demurrers which appear in this record. The principal assignments of error relied upon in the brief of appellant are those assignments which question the action of the court in sustaining demurrers to those pleas which averred the appellant had been released upon the bond sued upon, by the action of the probate court of Cook county in requiring Josef Lurie to give, and in approving, two guardian's bonds given by Josef Lurie in the year 1897.

The first contention of the appellant is, that he was discharged by the action of the court in approving said bonds under and by virtue of the provisions of "An act to revise the law in relation to official bonds," approved March 13, 1874, in force July 1, 1874, as amended in 1879. (Hurd's Stat. 1905, chap. 103, p. 1417.) From a careful consideration of said act we do not think its provisions, in so far as they provide for the release of sureties upon official bonds,

apply to guardians' bonds, and are therefore of the opinion that the pleas which set up a release under that act were clearly bad and interposed no defense to the cause of action set up in the declaration, and that the demurrers interposed to certain of said pleas were properly sustained, and the demurrers interposed to the replications filed to other of said pleas were properly carried back to the pleas and sustained.

The further contention is made that if the appellant was not discharged upon the bond sued upon by virtue of the act of 1874, as amended in 1879, he was discharged by virtue of the provisions of an act entitled "An act to provide for releasing sureties on the bonds of guardians, conservators of idiots or insane persons, or trustees of any fund or property appointed by any court," approved May 11, 1877, in force July 1, 1877. (Hurd's Stat. 1905, p. 1419.) From an examination of the pleas filed by the appellant setting up a discharge under the act of 1877, we think the pleas are all defective in failing to allege one or more of the conditions precedent which are necessary to be alleged in order to show a valid order of discharge of the surety upon the guardian's bond under said act, and that for that reason said pleas were defective, and that if said pleas were not defective in that regard they were fully answered by the replications filed thereto, which were by the court held good upon demurrer and to which the appellant failed to rejoin. The only provision found in any statute of this State other than the act of 1877, which provides for the giving of a new guardian's bond, is section 35 of "An act in regard to guardians and wards," approved April 10, 1872, in force July 1, 1872, (Hurd's Stat. 1905, chap. 64, p. 1129,) which reads as follows: "It shall be the duty of the county court, at each accounting of the guardian, to inquire into the sufficiency of his sureties. And if, at any time, it has cause to believe that the sureties of a guardian are insufficient or in failing circumstances, it shall, after summoning the guardian, if he be not before the court, require him to give additional secur-

ity." And as the act of 1874, as amended in 1879, does not apply and the appellant has not brought himself within the provisions of the act of 1877, the bonds relied upon by the appellant to effect his discharge must have been taken under section 35 of chapter 64 of the Revised Statutes, and as a new bond taken under the provisions of said section 35 does not have the effect to release the sureties upon the former bond, but said bond is additional security and both bonds remain in force for the protection of the minor, the appellant was not discharged upon the bond upon which suit was brought, by the giving of the bonds relied upon as a discharge.

At the common law the surety of a trustee,—and a guardian sustains the relation of trustee to his ward,—could not require his principal to give other and additional security to secure the *cestui que trust,* or counter-security, and on a failure to give such security have his principal removed; (*Ridgeway* v. *Potter,* 114 Ill. 457; ) and the power of the probate court of Cook county to release the surety upon a guardian's bond is purely statutory. (*Clark* v. *American Surety Co.* 171 Ill. 235.) There was, therefore, no method whereby a surety, upon his own application, could be released from a guardian's bond until the passage of the act of 1877, which act provides that when a surety upon a guardian's bond desires to be released, he shall petition the court in which the bond was filed for such release, and that upon notice to the guardian in such manner as the court may direct, the court shall compel the guardian, within a reasonable time to be fixed by the court, to appear and settle his accounts and file in such court a new bond, which being done, the surety may be discharged from all liability on such bond. We think, therefore, before the giving of a new bond could have the effect to release the appellant from the guardian's bond sued upon as surety, five things must be shown: (1) A petition by the surety that he be discharged; (2) notice to the guardian; (3) a settlement of the guard-

ian's account; (4) the filing and approval of a new bond; and (5) an order of the probate court discharging the surety from all liability on the old bond. In the *Clark case* a surety upon an administrator's bond was discharged by the court without complying with the provisions of section 35 of the Administration of Estates act, which provisions are substantially the same as the provisions of the act of 1877, except that the one applies to administrators and executors and the other to guardians, and the court held that that section was the only one under which a surety upon an administrator's or executor's bond could be discharged upon the application of the surety, (although if appellant's contention is correct such surety could have been discharged under the act of 1874, as amended in 1879,) and that the provisions of said section, to effect a discharge, must be fully complied with by filing a petition, etc., in accordance with the provisions of said section 35 of the Administration of Estates act. And in *People* v. *Curry,* 59 Ill. 35, under a statute similar to section 35 of the Guardian and Ward act, it was held the surety of an administrator could not be discharged from his bond. The court say (p. 37) : "In the absence of the express enactment of the legislature to that effect, so to hold would be unwise and odious judicial legislation."

We are of the opinion the appellant was not discharged from the bond sued upon by the giving of the two subsequent bonds by the principal in said bond.

It is next assigned as error that the court erred in sustaining demurrers to the pleas and in carrying back demurrers to the pleas filed to replications which purported to answer said pleas, which pleas set up that at the time Josef Lurie resigned as guardian of Gottlieb Lurie, the said Josef Lurie turned over to his successor, Joseph Sabath, a large amount of real and personal property; also a trust arrangement, which, it was alleged, existed between said Josef Lurie and said Joseph Sabath with reference to said

property so turned over to such guardian, and that said
guardian realized from said property an amount equal to
the amount due his ward by Josef Lurie, and that the pro-
ceeds of said property were paid to said ward and retained
by him after he reached his majority, and that by reason
thereof the appellant was discharged upon said bond. The
matters averred in the replication to which demurrers were
interposed and carried back to the said pleas were, that the
property referred to in said pleas was the same property involved in the case of *Lurie* v. *Sabath,* 208 Ill. 401, which
was a chancery suit, and which, it was averred, was com-
menced in the name of Josef Lurie by appellant and prose-
cuted to final decree in his name and for the benefit of the
appellant, and that the decree in that case was *res judicata*
of the questions raised by said pleas, and that the successor
of Josef Lurie accounted to said ward for all he received
from said property, and that the suit upon said bond was
for the balance due said ward. We think the law clear that
no contract which could be made between Josef Lurie and
his successor, Joseph Sabath, with reference to assets in the
hands of Josef Lurie at the time he resigned and Sabath was
appointed, could effect a release of the bondsmen of Lurie.
If such contract could be made, then all that would be nec-
essary in order to discharge the bondsmen of an insolvent
guardian would be for such guardian to resign and have a
successor appointed, and for such guardian to turn over to
his successor a mass of worthless or encumbered property in
settlement of the claims of his ward, or for the successor to
give the former guardian time, as it was alleged was done
in this case, in which to pay the amount due his ward, by
taking the guardian's note or otherwise. This, it would
seem to be too plain for argument, would not be such a
change in the obligation assumed by the bondsmen of a
guardian as would release them upon a guardian's bond.
The minor was not a party to the contract between Lurie
and Sabath, whatever it was, and if he had been it would

make no difference. Neither does the fact that when he became of age his then guardian turned over to him the amount realized from the property received from Lurie to apply in part settlement of the amount due him by his guardian, and the fact that the probate court approved the action of Sabath in receiving from Lurie the property in question would not discharge appellant, as it must be the law that the bondsmen of a guardian are bound by all orders of the probate court which are lawfully made with reference to the estate of the ward, and if not lawfully made, clearly the bondsmen could not rely upon such unlawful order to effect their release upon the guardian's bond. As we understand the matter from a study of this record, the filing of the pleas upon this branch of the case is merely an attempt to try over, in an action at law, the issues determined adversely to the appellant in the case of *Lurie* v. *Sabath, supra,* which clearly cannot be done. We think the trial court ruled correctly upon this branch of the case.

It is further assigned as error that the court erred in refusing to sustain appellant's seventeenth and eighteenth pleas, and to hold that the bond of March 29, 1895, was given as counter-security. The Guardian and Ward act does not give the form of the bond to be taken under section 35 of that act, and the bond bearing date March 29, 1895, is substantially in the form prescribed by section 34 of the Administration of Estates act, and runs to the People, and is conditioned that if the guardian shall well and truly have kept and performed, and shall well and truly keep and perform, the conditions of the bond first given, (the bond of April 21, 1892,) in all respects according to law, and shall in all respects have performed, and shall continue to perform, the duties of his office according to law, then the said writing obligatory shall be void, etc. This bond clearly was not given as counter-security to the bondsmen upon the bond bearing date April 21, 1892, but was given as further and additional security for the protection of the

ward of Josef Lurie. The bond, in case one is given as counter-security, does not run to the People, as the bond sued on does, (*People* v. *Lott*, 27 Ill. 215; *Clark* v. *American Surety Co. supra;*) but to the sureties upon the former bond, and is conditioned to indemnify and keep harmless the sureties upon the guardian's former bond. We are clear the bond of March 29, 1895, was not given as counter-security but that it was given as further and additional security, and think the court did not err in holding appellant's seventeenth and eighteenth pleas bad.

It is finally contended that the dismissal of the suit as to Josef Lurie and Joseph Babka worked a discontinuance of the suit. We do not agree with this contention. By paragraph 24 of the Practice act (Hurd's Stat. 1905, chap. 110, p. 1534,) it is provided that amendments may be made discontinuing as to any joint defendants and changing the form of action at any time before final judgment. The appellant could have been sued alone upon said bond had the appellee seen fit to have thus sued him. (*McIntyre* v. *People*, 103 Ill. 142; *Cassady* v. *Trustees of Schools,* 105 id. 560.) If the appellant could have been sued alone in the first instance upon said bond, then the guardian, Josef Lurie, and the appellant's co-obligor, Joseph Babka, were not necessary parties, and under the section of the Practice act above referred to, a joint suit having been brought against Josef Lurie, Joseph Babka and the appellant, the appellee had the right to dismiss as to Josef Lurie and Joseph Babka at any time prior to final judgment and to take judgment against appellant alone, and the fact that judgment was rendered upon questions of law we think does not make a case different from one where final judgment is rendered upon a verdict. In *Mayer* v. *Brensinger,* 180 Ill. 110, on page 119, it was held the rule that in a joint action *ex contractu* a dismissal as to one defendant effects a discontinuance of the entire action, so as to render a judgment against the remaining defendants erroneous, does not apply where a defense is in-

terposed which is personal to the defendant who makes it, such as infancy, coverture, lunacy, bankruptcy and the like, or where one is joined as a defendant in the action who is an unnecessary or improper defendant.

We have given this record a patient and painstaking examination, and are of the opinion that no substantial defense to the bond sued on was set up in any of the pleas filed by the appellant, and that the trial court, upon the pleadings, disposed of the case correctly.

The judgment of the Appellate Court will therefore be affirmed.
                                        *Judgment affirmed.*