Walter Mahan et al., Appellants, v. Franklin Schroeder, Executor, Appellee.

1. EVIDENCE—*what not part of res gestæ.* Statements which are merely self-serving and hearsay in character, are no part of the *res gestæ.*

2. NEGOTIABLE INSTRUMENTS—*what not competent to affect assignment of notes.* Statements merely self-serving and hearsay in character, are not competent for the purpose of impeaching the assignment of notes and mortgage.

3. TRUSTS—*what essential to establish express executed trust.* In order to constitute an express executed trust, there must be a transfer of the legal title of the subject-matter by the owner to the trustee for the beneficial use of the *cestui que trust.*

4. TRUSTS—*what evidence essential to establish.* In order to establish an express trust, the evidence must be clear and satisfactory not only as to the existence of the trust but also as to the terms and conditions thereof.

5. NOTARIES PUBLIC—*when certificate of acknowledgment prevails.* The certificate of a notary to the effect that an instrument

was executed as the voluntary act and deed of the executing party, will prevail in the absence of proof of fraud or conspiracy.

6. MASTERS IN CHANCERY—*effect of findings of fact by.* The findings of fact by a master in chancery are not binding upon the chancellor but are merely advisory upon the issues of fact involved.

Bill in equity. Appeal from the Circuit Court of McLean county; the Hon. COLOSTIN D. MYERS, Judge, presiding. Heard in this court at the November term, 1907. Affirmed. Opinion filed April 21, 1908.

EDWARD PIERCE, for appellants.

STONE & OGLEVEE and EZRA M. PRINCE, for appellee.

MR. PRESIDING JUSTICE BAUME delivered the opinion of the court.

Appellants, grandchildren and legatees of Maria Schroeder, deceased, filed their bill in equity in the Circuit Court of McLean county against appellee, as executor of the estate of Herman Schroeder, deceased, the husband of said Maria Schroeder, to establish and declare a trust with respect to a certain note and mortgage for the principal sum of $11,000 and the proceeds of a certain check for the sum of $279.59, and to have an accounting thereof, and also for the appointment of a trustee to receive and administer said property according to the terms of the will of said Maria Schroeder. The master in chancery, to whom the cause was referred to take and report the proofs with his conclusions thereon, found the equities of the cause to be with appellants and recommended that a decree be entered in accordance with the prayer of the bill. Appellee filed certain objections to such report which objections were overruled by the master, and the cause was then heard by the chancellor upon exceptions to the report, and upon such hearing the exceptions were sustained and a decree entered dismissing the bill for want of equity.

Herman and Maria Schroeder were natives of Ger-

many and emigrated to this country immediately after their marriage in 1848, and settled in Bloomington, Illinois, in 1852. Herman Schroeder was induced to leave his native country because of his connection with the then threatened revolution. He was of so-called plebeian stock, while his wife was connected with the titled aristocracy. While the evidence does not disclose that he was ever matriculated as a physician, he occasionally assumed to prescribe for physical ailments, and was generally known as Dr. Schroeder. He was an eccentric man, of frugal habits, high temper and irascible disposition and during his residence in Bloomington accumulated considerable real and personal estate. Mrs. Schroeder was the superior of her husband intellectually and was a woman of strong character. Owing, presumably, to the difference in their temperaments and social positions, they were not altogether congenial, and their married life was not unmixed with trouble. In 1887 Mrs. Schroeder instituted a suit for separate maintenance against her husband which was subsequently dismissed and settled by a written agreement whereby the parties resumed their marital relations and Dr. Schroeder conveyed to his wife an undivided one-half interest in certain real estate in the city of Bloomington. Although the evidence does not disclose how or when she acquired title thereto, or the value thereof, it appears that she also owned a ten-acre tract of land in the vicinity of Bloomington, known as "Villa Maria." Thereafter Mrs. Schroeder collected the rents and income arising from her separate estate and kept her separate bank account. Three children were born of the marriage, Franklin, the appellee; Minerva, intermarried with one Schirmer and since deceased, and America, the mother of the appellants. Some time prior to January 9, 1901, Mrs. Schroeder exchanged her interest in the property in the city of Bloomington, conveyed to her by her husband, for 160 acres of land in McLean county, and upon that day she conveyed the said land to one Claus

W. Struve, and in consideration therefor received $1,000 in cash and a note for $11,000 dated February 26, 1901, payable in ten years, with interest at the rate of 5¼ per cent. per annum, evidenced by ten coupon interest notes for $577 each, the principal note and coupons being secured by a mortgage on the premises sold. On the same day she executed a voluntary conveyance of the premises known as "Villa Maria" to her son Franklin for life and after his death to the heirs of his body. In January, 1901, the health of Mrs. Schroeder commenced to fail and she was an inmate for a time of the Brokaw hospital in Bloomington, to which her husband had contributed $5,000, and where he preferred that she should go for treatment. She preferred to go to St. Joseph's hospital, because the nurses there could converse with her in German as well as in English, and subsequently she went to the latter hospital, where she remained the greater part of the time, until her death, November 27, 1901. In 1896 Dr. and Mrs. Schroeder executed their several wills whereby they bequeathed to each other all of their estate, and subsequently thereto, on April 5, 1900, July 25, 1900, December 13, 1900, and March 7, 1901, Mrs. Schroeder executed other wills whereby she bequeathed the greater portion of her estate to her daughter, America, for life, with remainder to her children. The $1,000 received by Mrs. Schroeder from the sale of her farm she deposited in the First National Bank of Bloomington, and during her illness at St. Joseph's hospital she frequently signed checks in blank to be filled out by her daughter America, who drew the money from the bank. On June 5, 1901, Mrs. Schroeder discovered that the entire amount of her deposit in the bank had been withdrawn and that she was without funds with which to pay her expenses at the hospital. She consulted her attorney, E. H. Miner, who had the custody of her will and of the Struve note and mortgage, and it was determined that she should borrow from the bank $300 upon her note, which Miner

should sign as security, and that the Struve note and mortgage should also be deposited as collateral security for the loan. A note of that date for $300, payable in ninety days, was accordingly made to the bank and Mrs. Schroeder was given credit for that amount upon her account. On June 10, 1901, Mrs. Schroeder spent the day with her husband at their apartments in Bloomington and returned to the hospital on the following day. On that day, June 11, 1901, she again consulted her attorney, Mr. Miner, who then drew up and she executed the following paper:

"St. Joseph's Hospital,
             Conducted by Sisters of St. Francis,
             Bloomington, Ill.
                         BLOOMINGTON, ILL., June 11, 1901.
"DR. HERMAN SCHROEDER:

"On my death I request that you turn over to my executor named in my will dated March 7, 1901, the note placed in your charge given by Claus Struve and Mary Struve, for $11,000 together with the coupons attached, that he, my executor, may carry out my last will and testament.

"Dated this 11th day of June, 1901.
                                   MARIA SCHROEDER.

"Attest: Sister M. Lucy."

This paper designated in the record as "Exhibit 41" was taken by Miner and attached to the will of Mrs. Schroeder. On or before June 15, 1901, following the execution of said paper, while Mrs. Schroeder was again at her apartments in Bloomington she sent for Mr. Miner and after a consultation with him, he went to the bank and procured the Struve note and mortgage and gave them to her. On June 15, Mrs. Schroeder indorsed the Struve principal note and coupon notes and executed an assignment of the mortgage securing the same, to her husband. The assignment of the mortgage was drawn in the office of August Boeker, the business agent and adviser of Dr. Schroeder, and the acknowledgment of Mrs. Schroeder to said assign-

ment was taken by said Boeker as notary public. Of the $300 borrowed from the bank by Mrs. Schroeder there then remained to her credit $280, $20 having been drawn out by check on June 8, 1901. The amount of interest accrued on the note was 41 cents and Mrs. Schroeder gave to her husband a check on the bank for $279.59. This check bears date June 13, 1901, and is indorsed "paid" on the same day. Dr. Schroeder took up the note of his wife at the bank for $300 with money withdrawn by him from his personal account in another bank, and said note is stamped on its face "Paid June 12, 1901." At the time of these transactions Mrs. Schroeder was about 75 years of age and her husband was about 80 years of age.

The will of Mrs. Schroeder executed March 7, 1901, was not filed for probate until August 27, 1904, a period of two years and nine months after her death, when it was admitted to probate, and Miner, who was nominated therein as executor, having refused to qualify, Homer W. Hall was appointed administrator with the will annexed. Thereafter, Hall, as such administrator, brought suit in trover against Dr. Schroeder to recover the value of the Struve note and mortgage. This suit was dismissed by Hall on March 10, 1905, and on March 31, 1905, Dr. Schroeder paid to his daughter, America Hoffman, the sum of $1,000 in consideration of her written release of him from any and all claims that she might have had against him on account of any property, notes, credits or money that he might have which belonged to her mother at any time during her life, and from any and all claims which she might have under her mother's will, and she thereby assigned and transferred to her father all claim of interest which she might have in a certain promissory note which formerly belonged to her mother, the ownership of which was in issue in a suit against her father by the administrator of her mother's estate.

Dr. Schroeder died April 7, 1905, leaving a last will

and testament and codicil thereto, whereby he gave to his daughter America Hoffman for life and at her death to her son, George Mahan, certain lots in Bloomington; to his son Franklin and wife Elizabeth, for their joint lives and the life of the survivor, with remainder in fee to their children, certain real estate in Bloomington; the remainder of his estate to be divided at the end of five years after his death into three equal parts, one of which he gave to his daughter America; one to the children of his son Franklin, and one to his son Franklin.

As grounds for the relief prayed the bill alleges that at the time the principal and interest notes and mortgage in question were assigned by Mrs. Schroeder to her husband she was very sick and greatly troubled and worried in mind over the loss of her bank account and the manner of its withdrawal by her daughter America; that her husband, a strong minded, severe man, of whom she stood in great fear, fraudulently contriving to secure possession of said notes and mortgages, and deprive appellants of the benefit thereof, took advantage of her enfeebled condition and by threatenings, cajoling and representing to her that unless said note and mortgage were placed in his custody, their daughter America would obtain possession of and squander the same, so played upon her fears and weakness as to influence and induce her to consent and trust him with the custody and control of said papers; that in accordance with said arrangements she thereupon executed her certain writing declaring that said note and mortgage were placed in the hands of her husband as trustee only, and directing that at her death he return the same to her executor to be disposed of in accordance with her will; that she then gave to her husband a check for the balance of $279.59 remaining to her credit in the bank, and executed and delivered to him an assignment of the mortgage securing said notes, and that he thereupon cashed said check and paid to the bank the loan of $300 theretofore

made to her, and received and retained possession of the said notes and mortgage; that he paid no consideration for the said notes and the assignment of said mortgage; that Mrs. Schroeder was led to and did believe and intend that the sole purpose and object of said transaction was to place said notes and mortgage beyond the reach of their daughter America during the lifetime of the said Mrs. Schroeder, and at her death to be turned over by her husband to her executor; that she was overreached in said transaction by her husband, who retained possession of said notes and mortgage after her death and claimed to be the owner thereof, and who refused, and whose executor, appellee herein, still does refuse to account for or turn over said notes and mortgage to the representative of Mrs. Schroeder. The answer of appellee denies all of the allegations of the bill as to fraud and improper conduct on the part of Dr. Schroeder, and avers that Mrs. Schroeder sold, assigned and delivered the said note, coupons and mortgage to her husband for a good and valuable consideration, as her own individual property, without any trust or condition whatever.

There is much incompetent evidence in this record. Statements and declarations of Mrs. Schroeder out of the presence of her husband to the effect that she stood in fear of her husband, and as to her intentions with respect to the disposition of her property, not directly affecting the principal transactions here involved, were no part of the *res gestæ,* were merely self-serving and hearsay in their character, and therefore incompetent for the purpose of impeaching the assignment of the notes and mortgage to Dr. Schroeder. Francis v. Rhoades, 146 Ill. 635; Compher v. Browning, 219 Ill. 429; Dowie v. Driscoll, 203 Ill. 480; Oliphant v. Liversidge, 142 Ill. 160. This objection applies with equal force to the so-called declaration of trust executed by Mrs. Schroeder, designated as "Exhibit 41." There is no evidence in the record tending

to show that Dr. Schroeder ever had any knowledge of the existence of this instrument until nearly three years after the death of his wife, and the mere fact that the instrument is in writing and is directed to him, does not relieve it of its character as a self-serving declaration.

The contention of appellants that the instrument operated to create an express executed trust is not tenable. In order to constitute an express executed trust there must be a transfer of the legal title of the subject-matter of the trust by the owner to the trustee for the beneficial use of the *cestui que trust*. Barnum v. Reed, 136 Ill. 388. And in the same case it was held that a court of equity will not aid or perfect a defective gift. That if legally made by a transfer of the legal title to the trustee, it will be upheld and enforced, but if the gift is imperfect or incomplete, a court of equity cannot convert it into a declaration of trust on account of such imperfection, and thus give it effect. In the case at bar the evidence tends to show that the Struve note and mortgage were not in the possession of Dr. Schroeder when Exhibit 41 was executed by Mrs. Schroeder, and it is conclusively established that said note was not indorsed nor was said mortgage assigned by Mrs. Schroeder until four days after the execution of said paper. Dr. Schroeder therefore had no title to said note and mortgage when Exhibit 41 was executed, and the title subsequently acquired by him was not, so far as the evidence tends to show, impressed with any trust. Appellants rely upon the case of Padfield v. Padfield, 72 Ill. 322, as supporting their contention that the execution by Mrs. Schroeder of Exhibit 41 constituted an express executed trust. The undisputed facts in that case were that the trustor, Thomas Padfield, had transferred by indorsement to his son, a large amount of notes, mortgages and other securities, and that the son then executed a contract binding himself to pay his father $2,000 annually for his support, and upon the death of his father to pay to

certain parties two-thirds of the amount realized by him on said notes for the use of the other children of the trustor, and it was held that the trust became executed in favor of the beneficiaries. The cases are clearly distinguishable upon the facts.

It is difficult to reconcile the conduct of Miner, who acted as attorney for Mrs. Schroeder and who had the custody of her will executed March 7, 1901, in which he was nominated as executor, and of the paper designated "Exhibit 41," with his testimony as it appears in the record in support of the contention of appellants. Miner took no steps to have the will of Mrs. Schroeder probated until two years and nine months after her death, and then refused to qualify as her executor. And when Hall was appointed as administrator with the will annexed and attempted to execute the will, and to that end brought an action in trover against Dr. Schroeder to recover the value of the note and coupons in controversy, he informed Hall and the attorney whom Hall had retained to prosecute said suit, that said note and coupons had been turned over by Mrs. Schroeder to her husband in his own right, and upon receipt of such information the suit was dismissed. The inference is quite clear that Miner was informed by Mrs. Schroeder that she had in fact indorsed said note and coupons and assigned the mortgage securing the same to her husband absolutely.

The evidence is conflicting as to the mental condition of Mrs. Schroeder during the time of the transactions in question and as to the relations then existing between herself and her husband. A careful consideration of the evidence, however, leads us to the conclusion that Mrs. Schroeder then had sufficient mental capacity to transact ordinary business; that her husband treated her with kindness and consideration during her illness; and that she was not overreached or unduly influenced by him.

It is not controverted that Mrs. Schroeder was much shocked and grieved by the conduct of her daughter

America in surreptitiously withdrawing for her own use the larger part of the deposit of $1,000 in the bank and that she then lost confidence in her daughter and regarded her as a spendthrift, incapable of appreciating the proper value and use of money.

The mere fact that Dr. Schroeder may have impressed upon his wife the danger of permitting their daughter America to have access to her property, and encouraged his wife to place it in his hands where it would be beyond the power of Mrs. Schroeder to accede to the importunities of their daughter, does not stamp the transaction involving the assignment of the note and mortgage to him, as fraudulent, or as having been so assigned in trust. Upon its face the assignment of the mortgage bears no indication that the transaction was impressed with a trust. The assignment of the mortgage was acknowledged by Mrs. Schroeder before a notary public, and in the absence of any allegation in the bill, or of any proof in the record of fraud on the part of the notary, or of any fraudulent collusion between such notary and Dr. Schroeder, the certificate of the notary that the assignment of the mortgage was executed by Mrs. Schroeder as her voluntary act and deed must prevail. Oliphant v. Liversidge, *supra;* Gritten v. Dickerson, 202 Ill. 372. Neither does the record disclose any evidence tending to show that the transaction of indorsing the note and coupons by Mrs. Schroeder and delivering the same to her husband was impressed with a trust. August Boeker, the notary, testified: That he was called by telephone message to the residence of Dr. and Mrs. Schroeder; that when he arrived there Mrs. Schroeder met him and said "Mr. Boeker, just think of it, my only daughter has taken all the money from her mother while she was sick in bed, every dollar I had is gone, a daughter robbed her own mother;" that Dr. and Mrs. Schroeder then showed him the checks which had been signed by Mrs. Schroeder for different amounts, filled out in the handwriting of her daughter Amer-

ica; that Mrs. Schroeder then said that she wanted to make an assignment of the mortgage to her husband as he had to pay the money she had borrowed at the bank; that Dr. Schroeder agreed to pay any notes that she had signed and to give her all the money she needed as long as she lived.

It is urged that the fact that Dr. Schroeder paid his daughter America $1,000 in consideration of the release by her of all her interest in her mother's estate and the transfer to him of her interest in the Struve note, the ownership of which was involved in the suit in trover above mentioned, was tantamount to an admission on his part that he did not then own said note in his own right, but as trustee. We do not think that the inference suggested necessarily follows. The evidence discloses that Dr. Schroeder was then seriously ill, and that he died within a week thereafter. He was doubtless moved to make the settlement by the importunities of his daughter for money and his desire to terminate a litigation, which must, necessarily, at his advanced age, have been the cause of much irritation to him.

It was incumbent upon appellants to establish by clear and satisfactory evidence, not only the existence of a trust, but also the terms and conditions of such trust, as alleged (Lurie v. Sabath, 208 Ill. 401), and this, we are constrained to hold, they have failed to do.

The findings of the master were not binding upon the chancellor as is claimed by appellants, but merely advisory upon the issues of fact involved. Ennesser v. Hudek, 169 Ill. 494.

Appellee's motion to tax the cost of the additional abstract to appellant will be denied, and the decree of the Circuit Court will be affirmed.

*Affirmed.*