DETERMINED IN THE

## SECOND DISTRICT

OF THE

# APPELLATE COURTS OF ILLINOIS

### DURING THE YEAR 1912.

---

## Anna Platt, Plaintiff in Error, v. William J. Williams, Jr., Executor, etc., Defendant in Error.

### Gen. No. 5,558.

1. EXECUTORS AND ADMINISTRATORS—*citation is proper against executor claiming money as gift.* Where an executor claims money as a gift from the testator, the Probate Court has jurisdiction conclusively to settle the rights of the parties in interest, by the exclusive method of citation, under the Administration Act, sections 81 and 82, against the executor, to require him to inventory the money, and the court cannot require the sum to be inventoried, and then appoint an administrator *pro tem.* to sue the executor in an action at law, where a trial by jury may be had.

2. JURY—*no right to jury trial on citation to require executor to inventory money.* A citation against an executor, under the Administration Act, sections 81 and 82, to require him to inventory money, which he claims as a gift from the testator, does not deprive the parties of a right to a trial by jury.

3. EXECUTORS AND ADMINISTRATORS—*charges and credits.* An executor of his father's estate had contracted to erect a building for his father, received a payment in advance, did some foundation work, and ceased work on discovering his father would live but a short time. He also paid out money as an executor. *Held,* that he should be charged with the advance payment, less the amount spent on the foundation, and the matter of the credits for ex-

penditures in other transactions should be left to take their ordinary course in the Probate Court.

4. EXECUTORS AND ADMINISTRATORS.—*when money received by son from father is a loan.* On a hearing on a citation to require an executor to inventory money he claims as a gift from his father, an instrument in evidence recited the father had given the son the money in consideration of certain monthly payments. The father was very old, in poor health, could not read or write, and there was no evidence that the instrument was read to him, or that he clearly understood its purport, and the attorney who prepared the paper did not see the father, or know what the transaction was. There was evidence that the father had stated he had given his son the money, but the witnesses did not distinguish clearly the meaning of the word "give." Brothers, sisters, and relatives of the executor testified to conversations with him before and after the father's death to the effect that he admitted the money was a loan, which was denied by the executor. *Held,* the money was received as a loan.

5. WITNESSES—*when executor incompetent to testify in proceeding to require him to inventory money claimed as a gift.* On a hearing on a citation to require him to inventory money he claims as a gift from the testator, the executor is under R. S. c. 51, § 2, incompetent to testify as to any fact occurring in the lifetime of the testator, except as to conversations or transactions testified to by the opposite party, or party in interest, as having occurred between them and himself.

6. WITNESSES—*when testimony by parties in interest makes incompetent witness competent to testify.* Where a father, leaving children, dies intestate as to his personalty, and his will appoints a son executor, on a hearing on a citation to require the executor to inventory money which he claims as a gift from his father, the other children, testifying to conversations and transactions between themselves and the executor, are parties in interest, and the executor is competent to testify as to such conversations and transactions.

7. WITNESSES—*incompetency of husband makes wife incompetent to testify for him.* Where a husband is incompetent to testify for himself, his wife is also incompetent to testify for him.

Error to the Circuit Court of La Salle county; the Hon. EDGAR ELDREDGE, Judge, presiding. Heard in this court at the October term, 1911. Reversed and remanded with directions. Opinion filed April 25, 1912. Rehearing denied October 9, 1912.

BUTTERS & ARMSTRONG, for plaintiff in error.

DUNCAN, DOYLE & O'CONOR, for defendant in error.

MR. PRESIDING JUSTICE DIBELL delivered the opinion of the court.

William Williams died in La Salle county on November 24, 1906, leaving a last will, which gave his real estate equally to his four children, William J. Williams, Jr., James Williams, Anna Platt and Mary Monson, and which did not dispose of his personalty, which personalty therefore became intestate estate to be shared equally by said four children. William J. Williams, Jr., became the executor and during his administration of that office divided $4,000 equally among the four children, including himself. Afterwards Mrs. Platt filed a petition in said estate in the Probate Court of La Salle county, in which she alleged that the executor had received a large sum of money belonging to the testator, which he had not inventoried, and that the executor was indebted to the testator in large sums which he had failed to account for. A citation was issued, and there was a hearing and an order in the Probate Court, and an appeal to the Circuit Court, where, upon a hearing, the court adjudged that the $2,500 was a gift by deceased to his son, William, in his lifetime, and that said $2,500 was no part of the estate of the deceased, but was the sole property of William J. Williams, Jr., and that he was not required to inventory the same, but that he should charge himself with $500 and be credited for moneys he had lawfully expended as executor, for which he had not been credited. This is a writ of error sued out by Mrs. Platt to review the order of the Circuit Court.

It is contended that the court had no jurisdiction to conclusively settle the rights of the parties in this proceeding, but that the court should have required the executor to inventory this $2,500 and then appoint an administrator *pro tem.* to sue the executor in an action at law where the parties could have a trial by jury. We consider Day v. Bullen, 226 Ill. 72, conclusive that the Probate Court had no power to appoint

and administrator *pro tem.,* but that the rights of the estate and of the executor could be determined only by means of a citation against the executor, under sections 81 and 82 of the Administration Act. In Martin v. Martin, 170 Ill. 18, and in Coffey v. Coffey, 179 Ill. 285, the rights of executors in large amounts of property were conclusively determined under such citations. It is argued that thereby the parties are deprived of a trial by jury. The executor here demanded a jury in the Circuit Court and afterwards withdrew that demand. Plaintiff in error did not ask a jury, but, in fact, there is no right to a jury trial in any proceeding under said sections 81 and 82, as held in Martin v. Martin, *supra,* and other like cases. There can be no recovery at law in this case, because, under Day v. Bullen, *supra,* an administrator *pro tem.* cannot be appointed while the regular executor is acting, and therefore the only suit at law possible would be William J. Williams, Jr., Executor, v. William J. Williams, Jr., and a party cannot sue himself at law, and under such circumstances an equitable proceeding was necessary, and this is in substances an equitable proceeding.

Defendant in error is a building contractor. He made a contract with his father to erect a certain building for $1,200, and received $500 in advance upon it and did work upon the foundation, amounting in value to $15 or $20 and then it was discovered that the father would live but a very short time and defendant in error ceased work under the contract. The Circuit Court charged him with the whole $500, but directed that he be allowed credits against that sum for any money which he might have paid out as an executor and with which he had not been credited. We are of opinion that he should be allowed $15 for what he spent upon the foundation, or, in other words that he should be charged with $485, and the matter of any credits growing out of any other transaction should be left to take their ordinary course in the

Probate Court. There is some evidence that a house built by deceased stands upon land owned by the executor, and it is urged that he should charge the value of that house against himself as executor. There is, however, other evidence tending to show that the title to that lot is in another person, not a party to this suit. We conclude that the evidence on that subject is insufficient to justify an order against the executor.

Defendant in error was erecting a building in February or March, 1906. It blew or fell down, entailing much loss upon defendant in error. His father caused $2,500 to be paid to him to enable him to rebuild that house. The main question is whether that was a gift by the father to the son or a loan of money. Defendant in error and his wife testified upon the subject in the Circuit Court. We are of opinion that, under section 2, of chapter 51 of the Revised Statutes, defendant in error was not competent to testify in this proceeding as to any fact occurring in the lifetime of his father, except as to conversations or transactions testified to by the opposite party or party in interest as having occurred between them and defendant in error. The term "party in interest" here should include not only Mrs. Platt, but her brother James, and her sister, Mrs. Monson. Where the husband is incompetent to testify for himself, his wife is also incompetent to testify for him. Treleaven v. Dixon, 119 Ill. 548; Bevelot v. Lestrade, 153 Ill. 625; Wickes v. Walden, 228 Ill. 56, 73. We therefore exclude from our consideration the evidence of defendant in error that his father gave him this money, and the evidence of his wife concerning the signing of the paper. Defendant in error went to a lawyer and caused a paper to be prepared and that paper bears the signatures of defendant in error and his wife. There is evidence that two crosses were also placed upon it, and that the testator, who could not read or write, said that that was the way he wrote his name, but no crosses are upon said instrument as set

out in this record. The body of the writing was as follows:

"This agreement made and entered into this first day of March, A. D. 1906, between William Williams, party of the first part, and William J. Williams, party of the second part. Witnesseth that the party of the first part has this day given to the party of the second part, $2,500 the receipt of which is hereby acknowledged and the party of the second part in consideration of the foregoing consideration entered into on the part of the party of the first part hereby agrees to pay to the party of the first part the sum of $12 per month during his life and in the event of his death to give the sum of $12 per month to Jane Jones during her life time."

It will be observed that the language of this paper is that the testator had "given" his son $2,500. Defendant in error called a number of witnesses who testified that about that time the testator said in their hearing that people thought his son was broke because this building had fallen down, but that he had given him $2,500 with which to rebuild it and would give him more if necessary, or words to that effect. That these witnesses did not distinguish clearly the meaning of the word "give" is shown by the fact that one witness, after testifying that testator said he had given his son $2,500, when asked to repeat the conversation, testified that the testator said he had let his son have $2,500 and afterwards again said that the testator said he had given him $2,500. Defendant in error called a real estate agent and examined him with reference to a conversation he had with testator, and this witness testified that the testator told him that his son, William, had had bad luck, that the wind had blown down a building and he needed some money, and he had let his son have $2,500, and his son had agreed to pay the testator interest at $12 per month for the use of that money and at his death to pay $12 per month to Mrs. Jones, an old lady who had been the testator's house-

keeper for 33 years. Plaintiff in error produced the three children and their husbands and wives, and other relatives, who testified to an interview with defendant in error in his father's bedroom and sitting room when his father was very ill, about 20 days before he died, in which the other children, who had learned that William had received $2,500 from his father, were urging that a new will should be made by their father, obviously to rectify this apparent inequality and that defendant in error assured them that no new will was necessary, that he had received his share and more too and would have some to pay back, and that there would probably be about $2,200 or $2,300 for each child, in which case he would have to pay back $200 or $300 which he had received more than his share. Some of these witnesses testify to one or more interviews after their father's death, wherein defendant in error repeated the same statement. Defendant in error was a competent witness as to these conversations and he denied that he had ever made any such statements. There was a very clear preponderance of the evidence against him on that subject and we are required by the state of the record to believe that he did say that his father had loaned this money to him, that he was paying his father interest on it at the rate of $12 per month, and that it was more than his share of the estate and that the excess would be paid back to the estate.

The testator was very old when this transaction occurred and had been in poor health for about a year and a half and could not read or write. Defendant in error had the paper prepared by an attorney without the attorney seeing the testator or knowing from him what the transaction was. There is no proof that the writing was read to the testator at or before the time when it was delivered to him, or that he realized any more of its contents than that he had let his son have $2,500 and his son was to pay him $12 a month interest thereon and thereafter $12 per month interest to Mrs. Jones, the housekeeper, while she lived,

if she survived the testator. In this state of the proof we conclude that the statements by defendant in error to the other members of the family must be regarded as establishing as against him that the real transaction was a loan of money, and that therefore he should be required to inventory it, subject to the rights of Mrs. Jones to be paid $12 per month during her life, since the death of the testator. The proof seems to show that defendant in error paid $12 per month to the testator during the rest of his life and has undertaken to give Mrs. Jones something as a substitute therefor since the testator's death.

The order of the Circuit Court is therefore reversed and the cause is remanded with directions to dismiss the petition as to the house without prejudice; to require the executor to inventory and charge himself with $485, money received upon the unperformed contract, as of the date of his father's death; and to require the executor to inventory and charge himself with $2,500, subject to such rights as Mrs. Jones may have to receive $12 per month therefrom during the rest of her life after the death of the testator, unless it shall be shown that her rights have been satisfied or discharged, and to direct that the executor be removed from that office if he does not obey said order within thirty days after the same is entered. A certified copy of that order should be transmitted to the Probate Court for enforcement there.

*Reversed and remanded with directions.*