DETERMINED IN THE

## THIRD DISTRICT

OF THE

# APPELLATE COURTS OF ILLINOIS

### DURING THE YEAR 1925.

---

Charles V. Smith, Administrator de bonis non of the Estate of Harry H. Hardesty, Deceased, Defendant in Error, v. Olive George Baxter, Plaintiff in Error.

### Gen. No. 7,828.

1. TRUSTS—*burden of proof in suit to establish existence of trust in moneys delivered to defendant by decedent during his lifetime.* In a suit to establish the existence of a trust in certain moneys delivered to the defendant by the complainant's decedent during his lifetime, and to secure an accounting as to the same, the burden was upon the complainant to prove that the trust existed as alleged in the bill.

2. TRUSTS—*degree and strength of proofs required to establish trust in moneys delivered to defendant by decedent during his lifetime.* Complainant, seeking to establish a trust in certain moneys delivered to the defendant by the complainant's decedent during his lifetime, cannot prevail unless, on consideration of all the evidence, it must be said that it not only clearly and satisfactorily supports the claim of a trust, but is inconsistent with every other reasonable claim put forward against a trust.

3. TRUSTS—*necessity for showing of terms and conditions of alleged express parol trust.* Where a complainant seeks to establish the existence of a parol express trust, he must support his bill by clear and satisfactory evidence, not only as to its existence, but also as to its terms and conditions.

453

4. APPEAL AND ERROR—*scope of review in equity on certificate of evidence.* A court of review on appeal or error in equity regards no question in the record upon a certificate of evidence as closed, but all are open and must be determined as *res integra.*

5. TRUSTS—*sufficiency of evidence to establish express trust in moneys delivered to defendant by decedent during his lifetime.* Evidence in a suit by an administrator to establish an express trust in moneys delivered by his intestate to defendant, decedent's sister, on the theory that it was given to her to invest for decedent, held insufficient to establish such trust, being equally consistent with an intention that the moneys were a gift to defendant.

6. GIFTS—*presumptive gift of money delivered by brother to sister by check or draft payable to her.* Where money is delivered by a brother to his sister, by check or draft payable to her, in the absence of explanation the inference is that it was intended as a gift.

7. TRUSTS—*jurisdiction of equity of suit to establish express trust in moneys delivered to sister by decedent in his lifetime.* Equity has jurisdiction of a suit by an administrator *de bonis non* appointed in another state seeking to establish a trust in moneys delivered to the sister of the intestate during the decedent's lifetime, and asking an accounting therefor.

Error by defendant to the Circuit Court of Hancock county; the Hon. WILLIS F. GRAHAM, Judge, presiding. Heard in this court at the October term, 1925. Reversed and remanded with directions. Opinion filed December 31, 1925. Rehearing denied February 23, 1926.

O'HARRA, O'HARRA & O'HARRA, for plaintiff in error.

MACK & MACK and SCOFIELD & BELL, for defendant in error.

MR. JUSTICE CROW delivered the opinion of the court.

A decree was rendered by the circuit court finding that certain personal property in the possession of plaintiff in error was in fact the property of complainant's intestate. It is averred in the bill that Harry H. Hardesty at his death had money invested in real estate located at Nauvoo, and other property consisting of certificates of deposit, issued by a bank for money belonging to him at the time of his death, on

deposit in the State Bank at Nauvoo. It is charged that defendant had in her possession a large amount of money which had been intrusted to her by Hardesty for investment for him, and that she invested it and at the time of his death she had in her possession, as his agent, notes, mortgages and certificates of deposit which belonged to him; that she was his sister and sustained a relation of trust and confidence toward him and that at his death she held all said property in trust for his estate; that it was her duty to turn said property over to complainant but that she refused to do so; that the facts with reference to the amount of money so invested were unknown to complainant and that he was not advised as to the security in which the same was invested. It was averred on information that certain notes and mortgages aggregating about $20,000 were so held by defendant.

An answer was filed by Olive George Baxter, denying she held any money or the proceeds of money belonging to Harry H. Hardesty and averring that he gave her all the money in her possession formerly owned by him. It averred that he delivered to her at different times three sums of money of $5,000 each and another sum of $5,600 and that each was a gift to her and that she invested said sums and claimed and controlled them as her own, because they were given to her by her brother, and that she received and accepted said several sums as absolute and complete gifts and always thereafter held, used and controlled the money as her property and that it belonged to her and not to the estate of her brother and denied that she should be required to deliver it to the complainant as administrator of said estate. The answer makes complete denial of the agency of defendant for her brother and of every fact averred against her right in the bill and of every charge in the bill as to the right of her deceased brother in the property or

any of it. It gives a full history of all her transactions with the money.

The bill was filed to the March term, 1914, and the cause was referred to a special master at the March term, 1915, of the court. At the June term, 1922, the special master's report of the evidence was filed and by agreement it was made a certificate of evidence. The order of reference was to take and report the evidence and conclusions. The report was made with conclusions. The abstract states "the conclusions were dispensed with by order of court entered at the June term, 1922." The cause was taken by the court at the October term, 1923, with a rule on defendant to file a written brief by January 1, 1924, and on complainant to file a reply by February 1, 1924. At the October term, 1924, a decree was rendered, finding the facts in favor of complainant and that defendant was the agent of her brother for investment of the money in her hands and decreeing that she should turn over to the complainant as administrator *de bonis non* the proceeds and accumulations of such money. The cause was again referred to the master to take and state an account and to report the notes, mortgages, certificates of deposit, securities and evidences of indebtedness, with great detail therein described, which are not necessary to be noticed for the purpose of decision. Defendant prayed an appeal to this court, which was allowed on her entering into bond in the penal sum of $40,000. The appeal was not perfected, but the record is brought here for review by writ of error.

Generally the crucial question in controversies concerning gifts is that of delivery and the *quo animo* it was done. In this case the fact of delivery is not an open one. Money was delivered to Mrs. Baxter by her deceased brother during his first wife's lifetime. The total amount was $20,600 in three instalments of $5,000 each and one of $5,600. Why did Harry H. Hardesty, her brother, deliver it to her?

The right of recovery predicated upon complainant's bill is, it was delivered to her to invest for him, and therefore the complainant as administrator seeks to recover it as part of the assets of Hardesty's estate. Mrs. Baxter denies this claim. She does not rest upon denial, but accounts for her possession of the money by averring it was a gift. Complainant, making the averments contained in his bill, assumed the burden of proving them as made by clear and satisfactory evidence. He asserts defendant was intrusted with decedent's money for the purpose of investment for his use and benefit. The failure to account, therefore, involves a breach of trust and confidence, an act or series of acts of bad faith. An accounting was sought and decreed by the chancellor. Being a suit charging a trust, a bare preponderance of evidence is not sufficient to warrant a recovery. Every presumption favors the existence of good faith and fair dealing. Nothing is ever presumed against it. Therefore, if all the evidence and all fair inferences that may be drawn from it are as much or more in harmony with good faith and fair dealing on the part of plaintiff in error than with bad faith, she must prevail. Defendant in error has argued in this court as if the only question for consideration is a gift, and the burden of proof on plaintiff in error. This is a misapprehension of the case presented by the record. The burden in the case below was on him to establish the trust as he had in his bill stated it.

The evidence for and against a trust relation is direct and circumstantial. The direct evidence must be tested not only by the competency of the witnesses but by their means of knowledge, their relation to the controversy, the congruity or incongruity of the evidence with the experienced order of things and its reasonableness in respect to those matters. The burden being on the complainant, every inference will be indulged against his claim if compatible with the de-

fendant's claim. Otherwise expressed, complainant cannot prevail unless, on consideration of all the evidence, it must be said it not only clearly and satisfactorily supports the claim of a trust, but is inconsistent with every other reasonable claim put forward against a trust. The trust averred being a parol express trust, must be supported by evidence clear and satisfactory, not only as to its existence but also as to its terms and conditions. *Lurie v. Sabath,* 208 Ill. 401; *Mahan v. Schroeder,* 142 Ill. App. 538; *Trubey v. Pease,* 240 Ill. 513. The *Mahan-Schroeder* case was decided by this court and affirmed by the Supreme Court in 236 Ill. 392.

A court of review on appeal or error in equity regards no question in the record upon a certificate of evidence as closed, but all are open and must be determined as *res integra.* This principle is especially applicable to a case like this, where the chancellor did not see the witnesses nor hear them testify, but could be informed as to the facts only as we are informed, by the record. We must, therefore, from the record before us determine whether Harry Hardesty transmitted $20,600 to his sister for the purpose of investment for him and to account as his agent and trustee, as the bill charges.

At the threshold of this case reflection upon reading the entire record suggests the natural inquiry, what were their relations? And why should he under the authentic facts in the record make her his agent to invest his money and account to him for it and its accretions? Mrs. Baxter was a sister of Hardesty. He lived at Minneapolis, Minnesota, and she at Nauvoo, Illinois, several hundred miles apart. He was engaged in the liquor business and had accumulated money and property. He was living with his wife, who died August 31, 1907. About two months after his wife's death—November 4, 1907—the present Mrs. Hardesty became his housekeeper and in that

relation continued until 1911, when they were married. During the interval, 1907 to 1911, she was assumed to be his wife and as such joined him in conveying property. Hardesty visited Mrs. Baxter at Nauvoo. They were on very friendly and intimate terms. He had no other brother or sister and left no child or children or descendants of child or children. The evidence offered in support of the averments of the bill consists of the testimony of Mrs. Hardesty, widow of H. H. Hardesty, Drake and Gray, attorneys for the administrator, and certain exhibits, consisting of letters and statements of moneys, interest, notes and securities written or sent by Mrs. Baxter or other persons. The evidence against the bill consists of the testimony of Schmitz, John Miller, Preston, Mr. and Mrs. Baxter, their son Harry, and Singleton.

There was much incompetent and irrelevant evidence put in the record. But the case being considered upon the whole record, must be decided as a consideration of the relevant and competent evidence, in the light of the law applicable to it, requires.

That Harry Hardesty in 1906 and 1907 sent to his sister sums aggregating $20,600 is admitted. He was a man long in business and had experience in business affairs. His sister was a housewife in a rural community and the evidence does not show she had any superior knowledge of business or any advantage he did not have. There is no evidence that investments in Hancock county were safer or that they did or could make better returns than at Minneapolis. On his visits to his sister, with whom it is conceded he was on terms of intimacy and friendship, he became acquainted with bankers in her home town. He told them he was going to send her money, make a division of his estate. His plan was to give her about half of it and retain half. As he expressed it, he was placing it so that half of it would be kept on his "side of the house." Soon after he made that statement he sent

her a draft for $5,000, drawn and payable to her. At other times he sent her like sums. The evidence shows the total amount sent her was "about half" of what he owned. One of the bankers asked him why he did not make a will dividing his property. He replied in substance that he knew a case where property was disposed of by will and the will was broken and he intended to avoid that. There was nothing unreasonable about that attitude. His situation at the time lends credence and force to this version of his conduct. He was childless. Evidently he was not in good health. He had "spells" though he was attending to his business generally. While the evidence shows nothing worthy of credit as to his relations with his first wife, probably he knew, as human observation about such matters continually verifies, that a contest between his widow and his sister, if ground for contest were presented, would result only in distressful controversy and needless dissipation of his accumulated wealth, great or small. Whether under the laws of Minnesota his sister would be entitled to anything, we do not know. But it was his property and as an incident of ownership he had the right to dispose of it as he pleased. The evidence as to his manner of disposition as contended by Mrs. Baxter is not unreasonable nor improbable; indeed it is highly probable. The condition produced by and attending the subsequent marriage does not diminish the probability.

The testimony of John S. Schmitz, formerly assistant cashier, and of William J. Singleton, formerly cashier, and, at the hearing, vice-president of the State Bank of Nauvoo, is replete with evidence of Hardesty's intention to make a gift of the money to his sister. During the period from the time of the receipt by her of the first remittance to the time of the last, Hardesty talked with them of his "family affairs," stated he was making a gift of the money and gave his reasons for it. The testimony of John Miller and

of Charles E. Preston of Minneapolis fully confirms the claim of gifts by Hardesty to his sister. Miller had known Hardesty many years. They lived on adjoining lots in Minneapolis for 15 years. He had known Mrs. Baxter since 1909. He had heard her brother say he was going to provide for her and look out for her as long as he lived. When Hardesty was "very sick" in 1909, witness heard a conversation between Mrs. Baxter and her brother relative to his business. She suggested to him that he was in a pretty serious condition and it would be advisable to arrange his business. He said, "Olive, you are all right, I have given you $20,000. I have enough left to take care of me." At the time of the conversation witness was "tending bar" for Hardesty. Mrs. Baxter had gone to Minneapolis in response to a telegram in expectancy of her brother's death. Preston had known deceased since 1886. He had worked for him "off and on" for 23 years and both had tended bar before Hardesty went into business. Witness was with him on two occasions when he sent money to his sister. On one of the occasions when he was sending money from the Northwestern National Bank, witness asked him what was his idea in sending money down there. His reply was, if anything happened, his sister would have it. He heard him remark "he had sent $20,000 down there." He remembers the fact of $5,000 being sent by New York exchange because the cashier wanted to charge him for the exchange, and he said, "You have the use of my money here and you ought not charge me for exchange." As we might expect, these witnesses were cross-examined closely, but there is nothing unreasonable in their testimony. It is in complete harmony with every known fact not open to controversy. They were not on intimate terms with Mrs. Baxter. They knew her brother intimately. They had opportunities for knowing vital facts relevant to the transactions of Hardesty concern-

ing his property. Nothing in the evidence discloses any hostility on their part toward Mrs. Hardesty or anything from which such an inference can reasonably be drawn.

There is no competent evidence in the record overcoming the evidence of the gift of the money by decedent to his sister. Every circumstance and all the competent, and, so far as it can be determined from a record, the most reliable evidence supports the claim of a gift. The fact he reserved the right to the interest or an annuity, if needed, does not impair the validity of the gift. *Northern Trust Co. v. Swartz*, 309 Ill. 586; *Martin v. Martin*, 170 Ill. 18; *Beatty's Estate v. Western College*, 177 Ill. 280. But the evidence shows that for two years before his death he had received no interest. It had all remained in the bank to the account of Mrs. Baxter, or was invested in securities held by her. There is no evidence that he asked for interest. The right to interest was personal and died with the person.

One of the strongest circumstances corroborating her contention that the money sent her was a gift is the fact he permitted her to hold the notes and mortgages and other papers representing the money for more than two years before his death without calling for them or the interest. The condition of his health was such as to admonish a prudent man to collect his worldly goods if any were outstanding if he had as worthy or more worthy objects of his bounty than his sister. He was out of business and had been for some time before his death. A circumstance relied on by complainant is that the notes and mortgages or some of them were sent to Hardesty and that he held them for some time. They were used as collateral security. But they were returned, and remained in Mrs. Baxter's possession at his death. She might lend them to him without impeaching her title to them. The fact he returned them and permitted them to remain

with her, under the circumstances, confirms the contention that they were gifts. *Martin v. Martin,* 170 Ill. 18 (34); *Shepard v. Shepard,* 164 Mich. 183. In all cases involving the question of gifts, there is no fixed method or procees for its solution except this: what was done, what were the circumstances and conduct of the parties toward the entire transaction indicating their intention? *Moore v. Moore,* 237 Ill. App. 190, where authorities are cited.

Complainant introduced evidence showing Mrs. Baxter did not list the notes, money and mortgages in Hancock county for taxation. The theory in the mind of counsel must have been that all people list their securities for taxation; therefore, she did not claim them. But everyday observation furnishes complete denial of the major promise and the minor, though implied, therefore, comes to naught. Solicitor for defendant seems to have been quite as guileless, for he wasted some pages of the record proving they were not listed in Minnesota by Hardesty.

We have not proceeded in the disposition of this case on the theory the suit is one to establish a gift or that it was necessary for the defendant to prove her title by gift to the property in controversy. It was not necessary for her to make such proof except to rebut the inference of a trust relied on by complainant. The theory of the bill is that the money was delivered to her as an express trust to be invested and to account to Hardesty for the interest and income. The bill charges that by the transaction between the brother and sister, and the delivery to her of the money, a relation of trust and confidence was created; and it is sought to have an accounting for the fund and its accumulations growing out of that equitable relation. The complainant is the representative of Hardesty. He stands in his place. Whatever bound Hardesty binds him. If he were now in person making that contention, under the principles applicable as above

stated, there would probably be more direct, competent and relevant evidence concerning it. We may assume upon the averments in complainant's bill he would, if alive and making these averments, testify that he sent the money to his sister to invest for him and deliver back to him the *corpus* of the fund and its accumulations. There is no such evidence in this record, nor anything approaching it. If it should be said his lips are sealed and we must depend upon circumstantial evidence to establish the trust, it must be conceded. But such evidence must be adequate to the purpose. Its character of adequacy must be such as, in the first place, to establish the trust, if nothing more were said. But it must, in the second place, go further and overcome any and every other reasonable inference than that of a trust. It is this principle that invests circumstantial evidence with its probative value. The delivery of the money by check or draft to Mrs. Baxter, payable to her, is a fact susceptible of establishing more than one inference. In the absence of explanation the inference would be it was intended as a gift. The complainant puts forward that inference which charges her with the duties and obligations of a trustee. Having done so, the burden rests on him, upon elementary principles and by the authorities without dissent, to produce such evidence as clearly negatives the other conclusion quite as consistent, a gift. That has not been done. If there is doubt or uncertainty as to the inference to be drawn from the evidence, it must, under the issues, be resolved against complainant. No one testifies there was a trust agreement.

If the widow of Hardesty were a competent witness, and to the extent that she is competent, there is nothing in her testimony, not met by other evidence, establishing the averment of a trust. She says her husband told her all about his business; but that clearly is not true as a reading of the abstract alone dis-

closes and the transcript discloses more satisfactorily, unless she has forgotten something said or done. If he had told her all about his business, the bill now before the court would not be as indefinite, uncertain and uninforming as it is. She says, too, she wrote all her husband's letters. But she does not offer secondary evidence of their contents or any of them, and some of them must have referred to these transactions, if the theory of her bill is true. That source of evidence failing, two lawyers from Minnesota actively engaged in the conduct of the case for complainant undertook to find some evidence to support the bill. The testimony from this source, after reading it, is regarded as the Supreme Court has characterized it, as worthy of little consideration. We forbear further comment on this point but refer to *Grindle v. Grindle,* 240 Ill. 145; *Bishop v. Hilliard,* 227 Ill. 386; *Wetzel v. Firebaugh,* 251 Ill. 198; *Barto v. Kellogg,* 289 Ill. 528. One of them in his zeal endeavored to put into the mouth, and attach to the actions, of the husband of defendant, evidence derogatory of her title. There is nothing in the case that renders any admissions or declarations by word or act of the husband of defendant competent against her claim. If competent and trustworthy, it would fall far short of establishing the theory it was supposed to establish.

A number of letters from Mrs. Baxter to her brother were in evidence, with statements relating to mortgages, notes, certificates of deposit and interest. They were put in the record probably on the theory they were accounts rendered by virtue of the alleged trust. But, like all evidence, they are to be interpreted. What do they mean? What inference shall be drawn from them? In placing an interpretation on them as instruments of evidence, they must be regarded in the light of all the other evidence and of the dual condition presented by the issues. If there were no denial of the trust relation, where parties were dealing

at arm's length, they might be regarded only as statements of the funds and their accumulations. But they were communications from a sister to a brother, left as the remnant of a family. Their relations were more than cordial. They were as close and affectionate, the evidence shows, as that of brother and sister ought to be. He had remembered her in a substantial way while in life, though in ill health. He had not, as he evidently supposed, left her to contend after his death with any one for that which was her own. He only had asked to have the interest if he needed it. She kept him advised in these statements as to the condition of an estate he had created for her. She was concealing nothing from such a bountiful and affectionate brother. The letters are full of affection that finds place in the heart of a sister and donee, but seldom, if ever, finds expression in letters of a mere trustee with a burden and no compensation. If he was to have or if he needed interest, she wanted him to know it was ready for him. But after all that, the moneys and securities were still in her possession in her box in the bank, the lock to which she controlled with the only key in existence. The significant fact is they could not possibly have been in her possession at his death if he had not delivered them. This delivery to and retention by her under all the circumstances is conclusive evidence of a gift. *Rosengren v. Manufacturers Nat. Bank,* 220 Ill. App. 608, 618, and cases cited. While some of the letters may not be clearly understood, and much in them evidently does not refer to the subject of this litigation, there is nothing in them when considered as a whole, in the light of all the other competent evidence, that supports the claim of complainant or in the least impairs the defendant's rights to the property. Some of them, being replies to letters written to her, were not competent without introducing such letters or satisfactorily accounting for them and making satisfactory secondary proof of

their contents. This was not done nor attempted to be done. Some of the letters written by Mrs. Baxter while the notes were in Hardesty's possession refer to the collection of interest and suggest the return of the notes that interest might be indorsed. If the notes were in fact Hardesty's she could have sent the interest and he could have indorsed the payment. This circumstance, itself, corroborates the evidence of her claim to the right of possession in some capacity other than that of mere trustee. If the interest was his, there was no occasion for her retaining it and advising him of it when he had the note.

The last point in the brief for plaintiff in error is that a court of equity had no jurisdiction of this case. To this we do not assent. It is true that under chapter 3, paragraphs 82 and 84, Cahill's Statutes, probate courts are given a jurisdiction summary in character, on petition, to compel parties having in their possession notes or other property of a decedent to disclose and surrender it. That was the course pursued in *Blair v. Sennott*, 134 Ill. 78. The court in that case, by Mr. Justice Scholfield, said (p. 87):

"There is no question of the death of Henry E. Tafft, or of the lawful appointment of Martha W. Tafft as his administratrix, and there is therefore jurisdiction over the estate; and, as we have seen, the affidavit, in our opinion, sufficiently charges that appellant has money in his hands belonging to the estate, to give the court jurisdiction to inquire into the truth of the charge under the statute."

The two cases of *Martin*, 170 Ill. 18, and 174 Ill. 371, arose in the same way and title to negotiable instruments as gifts was determined. The statute was intended only to provide a summary method for ascertaining the title to, and compelling restoration of, property withheld from the legal representative. Not limited in the scope of the inquiry, the court may ascertain the nature of the title of the parties and order

a surrender of the property if it in fact belongs to the estate. But that course could not be followed in this case. An administrator *de bonis non* appointed in another State is claiming the property. No court of probate in this State had acquired jurisdiction of the subject-matter of the estate of Hardesty. But we are of the opinion a court of equity would have concurrent jurisdiction of the subject matter as presented by the bill if administration were going on here. It alleged facts that constituted a trust in the hands of Mrs. Baxter. It charged an express trust and demanded an accounting. Not relating to lands, it was not necessary the trust should be evidenced by a writing. It was competent to create it by parol agreement. The fact the complainant did not prove the allegation of a trust did not oust the jurisdiction. An accounting was sought by the bill. Taking and stating accounts relating to trust is a familiar ground for the exercise of the equitable jurisdiction. Having acquired jurisdiction upon proper averments of the bill, the court may, and should, determine the equities of the parties.

The finding and decree of the circuit court that the money delivered to Olive George Baxter by Harry H. Hardesty was delivered for the purpose of investment by her and accounting to him is not supported by the evidence and is contrary to the evidence and equitable and legal principles applicable to it. The decree is therefore reversed and the cause remanded to the circuit court of Hancock county with directions to dismiss the bill for want of equity and to render a judgment against complainant for costs.

*Reversed and remanded with directions.*